## COLT et al. v. COLT et al.

*(Circuit Court, D. Connecticut. July 22, 1881.)*

1. CONSTRUCTION OF WILLS—CODICIL—REVOCATION OF BEQUEST.

A will gave to each of several legatees a specified number of shares of stock in a manufacturing company, including a bequest of 500 shares to testator's brother for life, and then provided that the residue of such stock owned by the testator at the time of his death "shall be divided among the several persons and parties to whom I have hereinbefore given legacies of stock, in the ratio and proportion in which said legacies of stock are hereinbefore given; * * * meaning that my residuary estate in said stock shall be shared by the same persons to whom I have given specified legacies in stock, and in precisely the same ratable proportions." By a codicil testator provided that "I also revoke and cancel, for reasons growing out of his late unbrotherly conduct towards me, the legacy of 500 shares of the stock * * * given in the aforesaid will" to his brother. *Held,* that the proportional part of the residuary stock which would fall to the brother by virtue of the specific legacy was separate and independent from it, and hence was not revoked by the revocation of the latter.

2. SAME—REVOCATION OF TRUST.

The will also gave to the executors and their successors 500 shares of such stock, "in trust for the issue" of such brother, "the profits and dividends thereof to be applied to the education of his said issue * * * until the youngest surviving of said issue shall have reached the age of 21 years," when the stock and the accumulations thereof should go to them in equal proportions absolutely. By a second codicil testator gave to each child of the said brother a legacy of $100, and then declared that "I hereby cancel and wholly revoke any and all other legacies or devises by me heretofore at any time made to or for the use and benefit of said children, or any of them; * * * and I hereby give" to certain children of a different brother "the property, to-wit, 500 shares" of such stock, "which in and by said original will is bequeathed to my executors in trust for the use" of the children of the first mentioned brother, "to be held by my executors for said children in the same manner, and subject to the same limitations, as are provided in said original will in the bequest to the children" of the first-mentioned brother. *Held,* that this was not a mere substitution of the children of one brother for those of the other, the title remaining in the trustees, but was a complete revocation of all legacies given to the one set of children, including their proportional part of the residue of stock, and operated to divest the title of the trustees, and revest it in them in favor of the other set; and hence this change did not carry with it any proportional part of the residue of stock, under the provision of the original will.

3. SAME—SUIT TO CONSTRUE—PARTIES—EXECUTORS AS TRUSTEES.

Where a will bequeaths property to the executors, in trust for certain legatees, and an action is brought by another legatee to construe the will, service upon the executors simply as such is sufficient to also make them parties in their capacity as trustees, and in that capacity they are bound by the decree.

4. JUDGMENT—COLLATERAL ATTACK.

In an action in a state court which had jurisdiction of the subject-matter, an order was made finding as facts that certain minor defendants and their guardian had been served with process, that "the parties appeared by their respective counsel, and the said minors were duly represented by their guardians." Subsequent orders and decrees recited that the "respondents" and the "parties" appeared by their counsel, filed their answer, etc. *Held* that, while these orders and decrees stand unimpeached by direct proceedings in the state court, the questions therein determined cannot be raised in an independent suit in a federal court, on the ground that the minors were not in fact represented by counsel.

5. SAME—GUARDIAN AD LITEM.

In an action in a state court having jurisdiction of the subject-matter, an order which finds that certain minor defendants "were duly represented by their guardian" is conclusive, until set aside by direct proceedings, that they were properly represented; and, in a collateral action, a federal court will not entertain the suggestion that, under the state law, the general guardian had no power to represent the minors, and that they were not bound by the decree because no guardian *ad litem* was appointed.

Affirmed in 4 Sup. Ct. Rep. 553.

In Equity. Suit to recover certain shares of stock of the Colt's Patent Fire-Arms Manufacturing Company.

*A. Payne, T. W. Dwight, L. C. Ashley,* and *S. E. Baldwin,* for plaintiffs.

*George G. Sill,* for defendants, children of James B. Colt.

*A. P. Hyde* and *C. E. Perkins,* for other defendants.

BLATCHFORD, Circuit Judge. This case involves questions arising under the will of Samuel Colt and the codicils thereto. The will was executed June 6, 1856. Only certain provisions in the will and the codicils need be noticed. The only property involved in this suit are shares of the capital stock of Colt's Patent Fire-Arms Manufacturing Company, and the dividends thereon. That company was a corporation. Its capital stock consisted of 10,000 shares, of $100 each, of which the testator owned 9,996 at the time of his death. He died January 10, 1862. The will gave to his wife, the defendant Elizabeth H. Colt, a gross legacy of money, and "the use and improvement, during her life," of 1,000 shares of said stock; and, subject to said bequest, it gave said stock to the children which should thereafter be born to him in lawful wedlock, and their heirs, as an absolute estate in fee-simple. It also gave to each of the children who might thereafter be born to him in lawful wedlock 500 shares of said stock. It also gave to his brother James B. Colt "the use and improvement, during his life," of 500 shares of said stock, and, after the death of his said brother, "to his issue lawfully begotten, as an absolute estate," on condition that said James B. Colt should "waive and relinquish all claims and demands, actual or pretended," which he might have against the testator or against said company. It also gave to his executors, and their successors in said office, 500 shares of said stock, "in trust for the issue of said James B. Colt lawfully begotten, the profits and dividends thereof to be applied to the education of his said issue, so far as the same may be necessary for that purpose, until the youngest surviving of said issue shall have reached the age of 21 years, when said stock, and all accumulations thereof, if any, shall go to said issue, in equal proportions, as an absolute estate." It also gave to the defendant Samuel C. Colt a legacy of money in gross, and 500 shares of said stock. It also gave to the plaintiff Isabella De Wolf Colt (now the wife of the plaintiff Frank E. De Wolf) a legacy of money in gross, and 100 shares of said stock, she being a daughter of his late brother, Christopher Colt; and to each of the other children of his said brother Christopher Colt a legacy of money in gross, and 100 shares of said stock. It also gave to L. P. Sargeant, under certain contingencies, 50 shares of said stock; and to E. K. Root, under certain contingencies, 50 shares of said stock; and to M. Joslin, under certain contingencies, 50 shares of said stock; and to J. Deane Alden, under certain contingencies, 25 shares of said stock. It also gave to certain persons, as trustees, 2,500 shares of said stock, to establish a school for the education of practical mechanics and engineers. It also gave "to each of my

executors hereinafter appointed" 50 shares of said stock. The will then proceeded:

"All the rest and residue of my estate, of every kind and description, not herein disposed of, I give, bequeath, and devise as follows: All the remaining stock of said Colt's Patent Fire-Arms Manufacturing Company of which I shall die possessed shall be divided among the several persons and parties to whom I have hereinbefore given legacies of stock, in the ratio and proportion in which said legacies of stock are hereinbefore given. All my other residuary estate shall be divided amongst the several persons to whom I have hereinbefore given pecuniary legacies in gross, in the ratio and proportion in which I have hereinbefore given such pecuniary legacies, meaning that my residuary estate in said stock shall be shared by the same persons to whom I have given specified legacies in stock, and in precisely the same ratable proportions, and that my other residuary estate shall be shared by the same persons to whom I have given gross pecuniary legacies, and in precisely the same ratable proportions. I hereby nominate and appoint my wife, Elizabeth Hart Colt, and my friends Richard D. Hubbard and Henry C. Deming, of said city of Hartford, to be executors of this will, with all such powers and authorities as may be necessary to execute the same; and, in case my wife shall decline this trust, I hereby nominate and appoint Richard W. H. Jarvis, of Middletown, Conn., in her stead, and, in case the office of either of said executors shall become vacant by death, resignation, or otherwise, at any time thereafter, I hereby authorize and empower my surviving or remaining executors to nominate and appoint a successor to fill said vacancy. And to each of said executors, in compensation for services in the execution of this trust, I hereby give and bequeath, in addition to the legacy and devise hereinbefore given, one-fourth of one per cent. of the cash value of my whole estate."

On the 12th of January, 1858, the testator executed a codicil to said will, which contained the following provisions:

"I also revoke and cancel, for reasons growing out of his late unbrotherly conduct towards me, the legacy of 500 shares of the stock of Colt's Patent Fire-Arms Manufacturing Company, given in the aforesaid will to James B. Colt for life, remainder to his children; and, in lieu thereof, I give and bequeath said 500 shares of stock to the trustees named in said will, for founding a school for practical mechanics and engineers, subject to the uses and trusts created in said will for that purpose."

It also gave to J. Deane Alden 50 shares of said stock, in lieu of 25 shares named in said will, subject to conditions named in said will. It also revoked the appointment of Henry C. Deming as executor, and appointed in his place R. W. H. Jarvis. It then continued:

"I also revoke and cancel the legacy given in said original will to the children of my late brother, Christopher Colt, so far as the oldest son of my said brother is concerned, and so far only; and in lieu thereof I give and bequeath to said oldest son one-fourth part of what he would have received if the legacy to him in said original will had not been revoked."

On the 2d of February, 1859, the testator executed a second codicil to said will, which stated that it was in addition to said codicil of January 12, 1858. It canceled and revoked the legacy made by the original will and codicil to trustees for founding said school. It also contained the following provisions:

"I hereby give and bequeath to each of the children of James B. Colt a legacy of one hundred dollars, and I hereby cancel and wholly revoke any and all other legacies or devises by me heretofore at any time made to or for the use and benefit of said children, or any of them. I give to the oldest son of my brother Christopher Colt a legacy of one hundred dollars, and no more, and all legacies heretofore made in his favor are canceled and revoked; and I hereby give, bequeath, and devise to the other children of my said brother (said eldest son not being included herein) the property, to-wit, five hundred shares of the stock of the Colt's Patent Fire-Arms Manufacturing Company, which in and by said original will is bequeathed to my executors in trust for the use of the children of said James B. Colt, to have and to hold to said other children of the said Christopher in equal proportions. This last bequest is in trust for said children; and the property hereby bequeathed is to be held by my executors for said children in the same manner, and subject to the same limitations, as are provided in said original will in the bequest to the children of said James B. Colt. And I hereby confirm and establish said original will, as altered, changed, and modified by this and the previous codicil, as and for my last will and testament."

The will and the two codicils were proved and approved, and ordered to be recorded in the probate office of the probate court within and for the county of Hartford, in the state of Connecticut, on the 6th of February, 1862. The bill in this case is filed by Theodora G. Colt, widow of said Christopher Colt, (as assignee of the interest of Edward D. Colt, deceased, who was her son and a son of said Christopher Colt,) and by Le Baron B. Colt, Samuel P. Colt, and Isabella De Wolf Colt, (three children of said Christopher Colt,) in their own right, and by Frank E. De Wolf, husband of said Isabella. The oldest son of said Christopher Colt was George D. W. Colt. At the time of the death of the testator, the said Isabella was of age, and the said Edward D., Le Baron B., and Samuel P. were minors. Edward D. became of age on the 28th of May, 1865, Le Baron B. on the 25th of June, 1867, and Samuel P. on the 10th of January, 1873. The said Theodora G. Colt was, as early as January, 1863, appointed by the said probate court the general guardian of the persons and estates of said Edward D., Le Baron B., and Samuel P. Letters testamentary on said will and codicils were issued by said probate court to Elizabeth H. Colt, Richard D. Hubbard, and Richard W. H. Jarvis. Four children were born to the testator and Elizabeth H. Colt. Two of them, Samuel J. and Elizabeth E., died without issue, after the execution of the codicils, and before the death of the testator. One of them, Henrietta J., died without issue, a few days after the death of the testator. The said Elizabeth H. Colt became her administratrix. The fourth child, Caldwell H. Colt, is still living. While he was a minor, the said Elizabeth H. Colt was his guardian. Joslin and Alden, named in the will, died before the testator.

On the 1st of June, 1864, the said James B. Colt brought a suit in equity in the superior court of the state of Connecticut for the county of Hartford. The suit was commenced by a petition. It set forth a copy of the will and of each of the two codicils. It claimed that James B. Colt had thereunder an interest absolutely or for his life, in

such proportion of the excess of the stock of said company owned by the testator at the time of his death, above the amount of stock disposed of in said will, as 500 shares bears to the whole amount of legacies thereof given in said will. It set forth the names of the persons then living who were interested in the 9,996 shares. It set forth, as so interested, among others, Isabella De Wolf Colt, (then unmarried,) and the said Edward D., Le Baron B., and Samuel P., and averred that Theodora D. Colt (who is the same person as the plaintiff Theodora G. Colt) was the guardian of the last-named three persons; that the inventory of the estate amounted to $3,257,644.63; that none of said stock, or the dividends thereon, would be needed to pay debts, and all thereof could be transferred and paid over to the legatees entitled thereto; that the executors had received dividends on the stock in which the petitioner was interested, but they denied that he had any interest in any of said stock or dividends; and that the amount of the stock and dividends to which he was entitled was over $200,000. The petition went on to say:

"And this petitioner avers that the respondents to this petition, and each of them, have, or claim to have, some interest, either legal or beneficial, in said residuary portion of said stock, and that it is necessary that they, and each of them, should be made parties to this proceeding, that their respective rights in said residuum may be so ascertained and fixed as to be binding on all said parties."

The petition prayed that the court would "ascertain and fix the amount of said residuum, and the parties entitled thereto, and their proportions under said will," and that the executors pay to the petitioner the dividends already collected or due, with interest, belonging to the shares of stock in which he held an interest under said will, and that he have the future dividends thereon. On this petition process was issued by a justice of the peace, directing the summoning of the following persons named in the process to appear before said superior court on the third Tuesday of July, 1864, to answer unto the foregoing petition, and show cause why its prayer should not be granted: Elizabeth H. Colt, as claiming an interest under said will, and as executrix of it, and as administratrix of Henrietta J. Colt, and as guardian of Caldwell H. Colt; Richard D. Hubbard, as claiming an interest under said will, and as executor of it; Richard W. H. Jarvis, as claiming an interest under said will, and as executor of it; E. K. Root; Henry C. Deming; Caldwell H. Colt; Isabella De Wolf Colt; Le Baron B. Colt; Edward D. Colt; Samuel P. Colt; Theodora D. Colt, guardian of the last-named three persons; Samuel C. Colt; and Luther P. Sargeant. The record of said suit in equity shows that the petition and the summons thereon were personally served, on the 2d of June, 1864, on the said Elizabeth H. Colt, Richard D. Hubbard, Richard W. H. Jarvis, E. K. Root, Henry C. Deming, Caldwell H. Colt, Isabella De Wolf Colt, Le Baron B. Colt, Edward D. Colt, Samuel P. Colt, Theodora D. Colt, and Samuel C. Colt, and on the 29th of June, 1864, on the said Luther P. Sargeant. At the September term, 1865, of said superior court an order was made by it, reciting that said

petition was brought by James B. Colt against the 13 respondents before named, to said court, at said July term, 1864, and reciting the substance of the contents of said petition, and referring to it as on file, and then stating that—

"This court doth find that the said petition was duly served and returned to this court at a term thereof holden on the third Tuesday of July, A. D. 1864, when the parties appeared by their respective counsel, and the said minors were duly represented by their guardians, and the said cause was continued to ――――, when the respondents filed a demurrer to said petition, and the parties were at issue thereon, and this court, having heard them by their respective counsel, adjudged said demurrer insufficient, and overruled the same, and ordered the respondents to answer over, and, by legal removes and continuances, the petition comes to the present term of this court, when the parties again appear, and are at issue upon a general denial of the allegations in the plaintiff's bill as on file, and now the court, after due inquiry and examination made, doth find as follows:"

The order then set forth the will and the codicils, and the *status* of the stock and the parties, as before stated, with the fact that Edward D. Colt had, since the last term of the court, arrived at his majority, and that the executors had refused to pay over to James B. Colt any part of the dividends on said stock, because they were advised that, under the will and the codicils, he took no interest in said stock, or, if otherwise, that the nature and extent of his interest was so uncertain that they could not safely transfer said stock, or any interest therein, or pay the dividends thereon to him, until specifically advised by the judgment of the court in respect to the nature and extent of said interest; and also because the time allowed by the court of probate for the settlement of the estate had not expired. The order then proceeded:

"This court reserves for the advice of the supreme court of errors next to be holden in the county of Hartford the following questions arising on the foregoing record: (1) Whether the interest taken in the residuum by James B. Colt is a life-estate or an estate in fee. (2) Whether said Colt shall receive interest upon the dividends made on his residuary stock, and, if so, from what time. (3) Have the legacies which the children of the testator who deceased in his life-time would have taken had they survived him lapsed, or are they to be considered and treated as intestate estate? (4) Do the said children of Christopher Colt take any share in the residuum of stock in respect to their legacy of 500 shares given to them in the codicil to said will? (5) Do the said R. W. H. Jarvis and H. C. Deming both take a legacy of stock under said will, or only one of them, or neither of them? (6) What is the amount of the residuum of stock, and who are entitled thereto, and in what proportions? This court also reserves all other questions arising upon the record, and also the question as to what decree shall be passed in this suit."

The said supreme court of errors, at its February term, 1866, for Hartford county, made an order in said suit in equity, reciting the parties, as before named, and the reservation of said questions for its consideration and advice, and then proceeding:

"And now, said parties having been fully heard, this court doth consider, and doth advise said superior court: (1) That the interest of James B. Colt in the residuum of stock is a life-estate only. (2) That James B. Colt is not to receive interest on the dividends of stock, unless the superior court, on

further inquiry, find that interest has been made by the executors, or the money has been used by them or by the Arms Company in their business, so that they may fairly be said to have made interest upon the money, either directly or otherwise. (3) That the legacies to the deceased children who died before the testator are to be treated as intestate estate. (4) That the children of Christopher Colt do not take any share in the residuum of stock, in respect to their legacy of 500 shares given to them in the codicil to said will. (5) Jarvis takes, Deming does not. (6) The amount of residuum of stock is 5,346 shares, of which Mrs. S. Colt takes 1,149 21-31; J. B. Colt, for life, 574 26-31; Samuel C. Colt, 574 26-31; Henrietta Colt, deceased, 574 26-31; Elizabeth E. Colt, deceased, 574 26-31; Samuel J. Colt, deceased, 574 26-31; Christopher's children, 459 27-31; Caldwell H. Colt, 574 26-31; R. D. Hubbard, executor, 57 15-31; R. W. H. Jarvis, executor, 57 15-31; Mrs. E. H. Colt, executor, 57 15-31; L. P. Sargeant, 57 15-31; E. K. Root, 57 15-31."

At the March term, 1866, of the said superior court, a final decree was made by it, reciting that the said petition of James B. Colt was brought to the term of said court held on the third Tuesday of July, 1864, "to which court the same was made returnable, when and where the petitioner appeared, and the respondents also appeared;" that "the respondents thereupon demurred to the sufficiency of said petition, which demurrer was overruled, and, by legal continuances, the said action came to the term of said court holden on the fourth Tuesday of September, A. D. 1865, when and where the respondents filed their answer, as on file, and this court, upon a hearing, found the following facts, as proved in said case:" The decree then quotes the findings contained in said prior order, made at the September term, 1865, including the matter before quoted herein from said prior order, and states the reservation, for the advice of the supreme court of errors, of the six questions before set forth, in the terms before quoted herein from said prior order, and then proceeds:

"And now, in pursuance of the advice of the supreme court of errors, given upon the reservation aforesaid, and upon further hearing before this court upon the question of interest upon dividends heretofore declared, this court doth order, adjudge, and decree as follows, viz.: that the legacies by said will to certain children of the testator who deceased before him are to be treated as intestate estate; that the children of Christopher Colt do not take any share in the residuum of stock in respect to their legacy of five hundred shares of said stock given to said executors in trust for him in the codicil of said will; that the said Henry C. Deming does not take under said will the legacy of fifty shares given by said will to each of the executors thereof, nor does he take any interest in the residuum; but the said Richard W. H. Jarvis does take said legacy of fifty shares, and does also take a proportionate interest in the residuum. The amount of the residuum of stock is five thousand three hundred and forty-six (5,346) shares, of which Mrs. S. Colt takes, in the manner specified in said will, 1,149 21-31 shares; James B. Colt, for life, 574 26-31; Samuel C. Colt, in the manner specified in said will, 574 26-31; Caldwell H. Colt, 574 26-31; Henrietta Colt, deceased, 574 26-31; Elizabeth E. Colt, deceased, 574 26-31; Samuel J. Colt, deceased, 574 26-31; children of Christopher Colt, in the manner specified in the will, 459 27-31; R. D. Hubbard, executor, 57 15-31; R. W. H. Jarvis, executor, 57 15-31; Mrs. S. Colt, executor, 57 15-31; L. P. Sargeant, 57 15- 31; E. K. Root, 57 15-31. And this court doth further find that the right, title, and interest of the said James B. Colt in and to the aforesaid 574 26-31 shares of stock is a life-estate only."

The court further found that the net amount of dividends on said 574 26-31 shares, since the death of the testator, to which said James B. Colt and his assigns were entitled, with interest thereon, and deducting income tax paid by the executors, amounted to $84,575.01, which amount the decree required the executors to pay to said James B. Colt and his assigns, with $330.09 as the costs of said petition. This decree was made May 21, 1866.

In pursuance of the will and codicils and said decree of the Connecticut court, the executors proceeded, in May and June, 1866, to dispose of the 9,996 shares of stock, and the accumulated dividends thereon. The dividends up to that time, from the death of the testator, had amounted to 150 per cent. on the par of the stock, being, on the 9,996 shares, $1,499,400. They paid to the parties determined by said decree the back dividends on their primary legacies of stock and on their legacies of residuary stock. They held in reserve for Mrs. S. Colt, for her life, her 1,000 primary shares and her 1,149 21-31 of the residuary shares. They transferred to Caldwell H. Colt his 500 primary shares and his 574 26-31 of the residuary shares, and to Richard W. H. Jarvis, administrator of Henrietta J. Colt, (in place of Elizabeth H. Colt,) the 500 primary shares and the 574 26-31 of the residuary shares belonging to Henrietta J. Colt. They passed over to the distributors of the estate the 500 primary shares and the 574 26-31 of the residuary shares given to Samuel J. Colt, and the 500 primary shares and the 574 26-31 of the residuary shares given to Elizabeth E. Colt, and adjudged to be treated as intestate estate, and which shares the probate court directed to be distributed, one-third to Mrs. Elizabeth H. Colt, one-third to Caldwell H. Colt, and one-third to Henrietta J. Colt, to be held by her administrator, R. W. H. Jarvis. Those 2,149 21-31 shares were transferred by the executors accordingly. They held in reserve for James B. Colt and his assignees, for the life of said James B., his 574 26-31 of the residuary shares. They held in reserve for the four children of Christopher Colt (Isabella, Edward D., Le Baron B., and Samuel P.) the 500 primary shares given to them by the second codicil, and the accumulated dividends thereon, as required, until the youngest of them should become of age, less what was allowed for their education; and, when that event happened, they, in January, 1873, transferred to each of the four 125 shares, and paid to each of them one-fourth of said accumulated dividends, the said Theodora D. Colt taking the share of Edward D. Colt, then deceased, as his assignee. They transferred to Samuel C. Colt his 500 primary shares and his 574 26-31 of the residuary shares. They transferred to the said Isabella her 100 primary shares and her 114 30-31 of the residuary shares, and to the said Edward D. his 100 primary shares and his 114 30-31 of the residuary shares. They held in reserve for the said Le Baron B. and said the Samuel P., each of them, his 100 primary shares and his 114 30-31 of the residuary shares, and transferred to each of them his share when he became of age. They transferred to the estate of L. P. Sargeant its 50 primary shares and its 57 15-31 of the residuary shares, and to the estate of E. K. Root its 50 primary

shares and its 57 15-31 of the residuary shares, and to each of the three executors his or her 50 primary shares and his or her 57 15-31 of the residuary shares. The back dividends received by the executors on the stock were all disposed of by either being paid at the proper time to the parties receiving the transfers of stock, or by being paid into the general estate of the testator, and so distributed, because decided not to belong to the parties receiving the stock as legacies. Powers of attorney were given by the executors to Mrs. S. Colt and to James B. Colt, respectively, to draw, during their respective lives, the dividends on their respective life-shares of stock. Thus all the stock, and all the back dividends on it, and all control over future dividends on it, was parted with by the executors, as such, before this present suit was brought, under what they relied upon as competent judicial authority, purporting to dispose of the title to said stock and dividends, in a suit to which all persons interested therein were supposed by the executors and the parties to the suit, and by the courts which adjudicated the questions raised and decided, to have been parties, except that the 2,149 21-31 shares set apart for Mrs. S. Colt for life remain, to go, after her death, as prescribed by the will; and the 574 26-31 shares which James B. Colt enjoyed for his life remain now in the names of the executors, to go, with the dividends thereon since his death, to whoever may be entitled to them; James B. Colt having died on the 28th of October, 1878.

It does not appear from any record put in evidence in the present suit what questions were raised or decided on the demurrer to the sufficiency of the petition, nor that anything was decided thereon except to overrule the demurrer, nor is any order on the demurrer set forth, except what is recited as to its being overruled, in the order and the decree of the superior court which are set forth, nor does the record show that the questions raised on the demurrer were adjudged by the supreme court of errors, except as oral testimony alludes to that fact. But all parties have referred to the reports in the supreme court of errors of the case of *Colt* v. *Colt*, 32 Conn. 422, and 33 Conn. 270, as if they were made part of the record. The case in 32 Conn. is a report of the suit brought in the superior court on the demurrer to the petition, and states that the case on the demurrer was reserved for the advice of the supreme court of errors. It gives the arguments of counsel in support of and against the demurrer, and shows that the questions raised and adjudged were as to the right of James B. Colt to a life-estate in residuary shares of said stock, in virtue of the primary legacy of 500 shares to him in the original will, although such primary legacy was revoked by the first codicil, and as to the jurisdiction of the superior court over the subject-matter of the suit, and as to whether the case was one of equitable cognizance. The decision of the supreme court of errors discussed and covered all those points, and it advised that the demurrer be overruled. The case in 33 Conn. is a report of the action of the supreme court of errors on the six questions reserved by the superior court for the advice of the former court on the facts found by the latter court, and the decision of the court assigns its reasons for its answers to the questions.

The bill in the present case is filed against Elizabeth H. Colt, widow and executrix, and as trustee for the children of Christopher Colt and guardian of Caldwell H. Colt, (a legatee, and claiming as heir of Samuel J. Colt and Elizabeth E. Colt, legatees,) and as claiming an interest under the will; Richard D. Hubbard, executor, and as such trustee, and as claiming an interest under the will; Richard W. H. Jarvis, executor, and as such trustee, and as claiming an interest under the will, and as administrator of Henrietta J. Colt; Caldwell H. Colt; Samuel C. Colt; the executors of E. K. Root; the executors of Luther P. Sargeant; Alice B. Colt, Norman Colt, and James Colt, children and heirs at law of James B. Colt; and Hugh Harbinson, administrator of James B. Colt. The bill sets forth the will and the codicils, and the proceedings thereon, and the qualifying of the executors. It alleges that, by the clause in the second codicil to the will, the four children of Christopher Colt were substituted for the children of James B. Colt, under the clause in the original will relating to the 500 shares given in trust for the issue of James B. Colt; that the plaintiff Theodora G. Colt became, on the 6th of June, 1870, the owner, by assignment from the administrator of Edward D. Colt, deceased, of all the right of his estate in the residuary estate and stock, and the accumulations thereon, formerly belonging to the estate of Samuel Colt; that 5,346 shares of said stock passed under the residuary clause of the will; that the said children of Christopher Colt have received under the will only 100 shares each of the stock legacies, and 460 (meaning 459 27-31) shares of the residuary stock, in respect of said 400 shares, and the accumulations thereon, the gross legacies to each and the residuum thereon, and the 500 shares of stock and dividends thereon, so given in trust for them, which 500 shares and the accumulations thereon were paid over to them on the 11th of January, 1873, deducting credits for education during their minority, according to the trust; that, in addition, they are entitled, under the will and codicils, to 574 26-31 "additional shares, and more, together with the dividends and accumulations thereon," for the following reasons: (1) In respect to the legacies of 100 shares each of stock to said children of Christopher, they were entitled each to more shares of the residuary stock than what they so received, and accumulations thereon. (2) The gift to trustees of 500 shares of stock in trust for the children of Christopher, in place of the children of James B., carried to the trustees, and entitled the said Isabella, Edward D., Le Baron B., and Samuel P., under the residuary clause of the will, to receive such proportion of the stock bequeathed by the residuary clause as said 500 shares bear to the whole amount of the other legacies of stock given in the will and codicils, and the dividends declared and accrued thereon since the death of the testator. (3) Said children of Christopher are also entitled, under the residuary clause of the will, to such proportion of the 574 26-31 shares of residuary stock now in the hands of the executors, in which said James B. claimed a life-estate, as said gift of 500 shares in trust and said legacies of 100 shares each to said children (making 900 shares in all) bears to the whole amount of legacies of stock given in the will. (4) As the

plaintiffs have hitherto received less than their lawful proportions of the residuary stock and of the accumulations thereon, they are now entitled to receive the whole of the 574 26-31 shares now in the hands of the executors, the income of which was paid to James B. during his life, in order to aid in making them equal with the other residuary legatees; and that, so far as any of said residuary stock and the accumulations thereon, rightfully appertaining to them, or to their said trustees in trust for them, have been transferred to said executors and trustees personally, and distributed and transferred to other parties, who, or whose legal representatives, are defendants herein, the equities between said defendants and the plaintiffs in the premises should now be adjusted by the court, so as to make good and restore to the plaintiffs the stock rightfully belonging to them under the will and codicils, and the accumulations thereon.

The bill also alleges that, when the testator died, **the** said Edward D., Le Baron B., and Samuel P. were minors; that the last two continued minors until after the termination of proceedings had in the superior court and the supreme court of errors with reference to the will and codicils; that the rights of said children under the will and codicils could be lawfully asserted only by a guardian *ad litem*, in the matter of their claims to residuary stock in respect of said legacy of 100 shares each, and by said executors in their capacity as trustees in the matter of their claim to residuary stock in respect of the 500 shares given to said executors in trust; that said children were not, in said proceedings, or in any proceedings with reference to their claims to residuary stock, in respect of said legacies of 100 shares each, represented by any guardian *ad litem*, or by any one in any capacity, and, in respect to their rights to residuary stock under said gift to said trustees for them of said 500 shares of stock, in place of the rights of said children being asserted by said trustees, the plaintiffs are informed, on the 27th of December, 1878, that said executors not only did not appear and urge the claims of said children in respect of said residuary stock, under said gift of 500 shares of stock, but waived the same, and by counsel and by written brief opposed the claims of said children in respect thereof, so that, in fact, the claims of said children under said will were at no time legally made, set up, heard, or passed upon in any of the proceedings with reference to said will and codicils; that, had said children been represented in said proceedings, and their claims presented and urged in respect to said legacies to them directly of said 100 shares each, and in respect of said legacy of 500 shares in trust, said additional shares of stock and accumulations thereon, as claimed in said bill, would have been delivered and paid over to them; that said executors and trustees pretend that said children of Christopher are not entitled, by reason of said legacy of 500 shares in trust, to any share in the original residuary stock, or to any share in the 574 26-31 shares of residuary stock in which said James B. has enjoyed a life-estate, or to any additional original residuary stock and dividends, in respect of said legacies of 100 shares each to said children, and, in support of such pretenses, allege said proceedings as affecting the

rights of the plaintiffs; that the plaintiffs are entitled to such additional shares and accumulations thereon, and are not barred from claiming them because of said proceedings, and for the following reasons: (1) The said Edward D. arrived at age pending said proceedings, and the said Le Baron B. and Samuel P. continued to be minors until after the termination of said proceedings, and neither of said minor children were represented in said proceedings by a guardian *ad litem.* The only guardian of them, pending said proceedings, was a general guardian of their persons and estates, to-wit, their mother, said Theodora G. Colt, appointed by said probate court, and she had no power to represent them in said proceedings on the questions of their rights and claims under said will and codicils, and did not in fact at any time appear in said proceedings. (2) The questions affecting the rights of said children in respect of said legacy of 500 shares in trust could not be passed upon in any proceedings until the youngest, said Samuel P., arrived at the age of 21 years. (3) The said trustees of said children were not summoned to appear in said proceedings in their capacity as said trustees, and entered no appearance therein in said capacity, on behalf of said children, and employed no counsel to appear before said courts in their behalf as said trustees, and in defense of the rights of said children, under said residuary clause of said will, in respect of said gift of 500 shares of stock in trust, and no issues were made up by said trustees before said courts in said proceedings, involving the rights of said children, under said will and codicil, to said residuary stock, in respect of said gift to said trustees, as so claimed. (4) If said Colt, Hubbard, and Jarvis, summoned to appear in said proceedings as executors, were deemed to be before said courts as trustees for said children, said proceedings cannot be held to affect or impair the rights of said children under said will and codicils, because said trustees, by their counsel, appeared before said courts, and actively opposed the claim of said children to said residuary stock, in respect of said gift of 500 shares in trust. (5) Said Theodora G. Colt, during the pendency of said proceedings, was unacquainted with legal business, and, owing thereto, did not apprehend it to be her duty, as guardian of said minor children, to appear, in response to the citation annexed to the bill in the superior court, in their behalf, or as such guardian, and did not in fact employ counsel to appear, or herself appear, to defend against, or to answer, or to become a party to, said bill, in either of said courts; and the said Isabella was at the time of said proceedings also unacquainted with legal business, and, owing thereto, employed no counsel to appear for her or to defend her interests, and supposed, as did also her husband, until about the 1st of January, 1879, that said executors had advocated her claims in her behalf, and had endeavored to present them properly to said courts in her behalf.

The bill further alleges that the executors, on the probate of the will, took upon themselves the execution of all the trusts therein contained, and from time to time thereafter assumed to act as trustees under said bequests to them in trust for the plaintiffs, and have continued so to act ever since, and are accountable as such to the plaintiffs, and now hold

in trust for the plaintiffs said 574 26-31 shares in which said James B. formerly claimed a life-estate; and that said Colt, Hubbard, and Jarvis sometimes further pretend that, on the 11th of January, 1873, on the strength of having transferred and paid over to the plaintiffs 500 shares bequeathed to them as trustees for the plaintiffs, and the accumulations thereon, they obtained from each of the plaintiffs a certain written instrument, purporting in each case to be a receipt to said respondents as trustees, and releasing and discharging said respondents, trustees as aforesaid, from all further accountings, actions, or causes of action for or on account of said trust thereof, and further pretend that, on the strength of having paid over and transferred to the plaintiffs the property coming to the plaintiffs from them as executors, under the terms of said will, they, at that time, as executors, obtained from the plaintiffs a certain other written instrument, acknowledging the receipt from them, as executors, of $2,975.24, as the proportional share of the plaintiffs in the balance then in the hands of said executors, and also acknowledging the receipt of the various other property coming to the plaintiffs from said respondents as executors, and, in consideration thereof, releasing the said respondents as executors from all further accountings, actions, and causes of action therefor, except as to the question of their interest in the remainder of the said 574 26-31 shares claimed to have been bequeathed to said James B. for life. The receipts to the trustees were four in number, under seal, and in this form:

"Received of Elizabeth H. Colt, R. D. Hubbard, and R. W. H. Jarvis, trustees under the will of the late Samuel Colt, my proportional share of 500 shares of the capital stock of the Colt's Patent Fire-Arms Co., bequeathed in said will to said trustees, in trust for the children (except the oldest) of Christopher Colt, and of the accumulations thereof, viz., shares, 125, cash, $31,-759.01; in consideration whereof I hereby release, discharge, and acquit the said Colt, Hubbard, and Jarvis, trustees, as aforesaid, of and from any and all further accountings, actions, or causes of action for and on account of said trust. January 11, 1873."

There was one receipt to the executors, signed by the four, under seal, in this form:

"Received Hartford, January 11, 1873, of Mrs. Elizabeth H. Colt, R. D. Hubbard, and R. W. H. Jarvis, executors of the late Samuel Colt, deceased, the sum of two thousand nine hundred and seventy-five dollars and twenty-four one-hundredths, ($2,975.24,) being our full proportional interest and share in the balance of said estate in hands of said executors, as per their final administration account this day rendered and accepted in the court of probate; and, having previously received in full the various other sums, legacies, annuities, devises, and distributions coming to us under said will and previous settlements and administrations, to our entire satisfaction, we hereby, in consideration thereof, release, discharge, and acquit said Colt, Hubbard, and Jarvis, executors, as aforesaid, of and from any and all further accountings, actions, and causes of action, excepting, however, the question of our interest in the remainder of the 574 26-31 shares of the capital stock of the Colt's Patent Fire-Arms Manufacturing Co., bequeathed in said will to James B. Colt for life, the title to said remainder being undetermined."

The bill alleges that the payments and transfers of stock aforesaid were not a full settlement and satisfaction with and to the plaintiffs of and for the amounts of stock, and the accumulations thereon, to which the plaintiffs and their said trustees are and were entitled under said will; that on the 10th of January, 1873, the said Samuel P. having attained his majority on that day, the said Frank E. De Wolf, Le Baron B., and Samuel P. arrived at Hartford from distant parts of the country; that on the next day they went to Colt's armory in Hartford, and there met the said Hubbard and Jarvis; that thereupon certain instruments were drawn, either by or at the dictation of said Hubbard and Jarvis, and the respondents, as trustees, paid over to the plaintiffs the said 500 shares, and the said balance of the accumulations thereon, and, as executors, paid over to the plaintiffs $2,975.24, represented by them to be the balance in their hands, as executors, belonging to the plaintiffs; that said Hubbard and Jarvis made no explanations to the plaintiffs of their rights under said will and codicils, nor that the plaintiffs had any further rights thereunder other than to receive said amounts; that the plaintiffs had no previous notice or knowledge that the respondents would ask at that time for any receipts or instruments to be made by the plaintiffs; that said instruments were made without deliberation, and without time or opportunity therefor, on the part of the plaintiffs, and without full and competent knowledge on their part of their rights under said will and codicils, and in ignorance of the course pursued by said respondents in the said proceedings in said courts, in filing a brief in opposition to their own rights as trustees of the plaintiffs, and to the rights of the plaintiffs as their *cestuis que trustent*, and in ignorance of the manner in which the said decree had been obtained; that the plaintiffs had great confidence in said Hubbard and Jarvis in the matter of their rights in the premises, especially in view of their fiduciary relations, and were inclined to readily comply with any request from them in relation to the making of any instruments of receipt which said Hubbard and Jarvis might indicate as being necessary and proper, and no allusion was made to said residuary stock, nor was it suggested that said instruments would ever be claimed to be a release of any of the rights of the plaintiffs, or of their trustees, therein; that said residuary stock, or their proportion thereof, or their, or their trustees', interest therein, did not form a part of the transaction, and were not covered by either of said instruments, but the receipt to the trustees related only to the 500 shares, and the accumulations thereon, referred to therein, and the trust as to said amount of said stock, and cannot be held to extend further than that in its effect; and the receipt to the executors related only to the property coming to the plaintiffs from the respondents strictly as executors, on account of the property given by the will directly to the plaintiffs, and not to any stock or property bequeathed to trustees of the plaintiffs, and was not understood by any of said parties as referring to any property given by said will in trust; and that said instruments cover only the amounts of stock, property, and money actually transferred and paid over by the respondents, and were without any other or further consideration there-

for, and do not operate as a release for anything further than said amounts.

The bill further alleges that the said Colt, Hubbard, and Jarvis sometimes also pretend that, as executors, they have, from time to time, filed in the court of probate for the district of Hartford their accounts relative to said estate and its settlement, and that the same were passed upon by said court, and duly approved, and are a bar to the prosecution of said claims of the plaintiffs; that the plaintiffs removed from the state of Connecticut in April, 1866, and have never since resided in that state, and did not reside there when said accounts were filed; that they received no actual or sufficient notice of the filing of said accounts, or of any proposed action thereon; that the plaintiffs, or some of them, were minors at the time of the filing, except when the last one was filed, and on the day that one was filed the youngest attained his majority; that the said trustees of the plaintiffs were not legally cited to appear, and did not appear, and said minors were not legally represented in the proceedings before said court of probate, and were not present, and were not bound thereby; and that, in any event, whatever may have been the proceedings in said court of probate, they are not a bar to the prosecution of said rights of the plaintiffs. The bill prays that said stock claimed by the plaintiffs under said will and codicils, and the accumulations thereon, may be delivered and paid over to the plaintiffs by said executors and trustees, and that they may be decreed to account respecting the residuary stock and accumulations thereon coming into their hands as executors and trustees as aforesaid, and especially with reference to the residuary stock and the accumulations thereon in respect of and appertaining to said gift of 500 shares of stock to them in trust for said children.

It appears to be conceded by all parties that the stock distributable as residuary stock was 5,346 shares. The plaintiffs contend that, if it be held that James B. Colt was not entitled to any interest in the 5,346 shares, and that the executors, in trust for the children of Christopher, (except the oldest,) were entitled to some of the 5,346 shares, based on the primary legacy to the executors, in trust for said children, of 500 shares, then the distribution of the 5,346 shares would be as follows:

|  | SHARES. |
|---|---|
| Mrs. S. Colt, for life, | 1,149 21-31 |
| The two surviving children, | 1,149 21-31 |
| The two deceased children, (intestate estate,) | 1,149 21-31 |
| The executors, in trust for the children, (except the oldest,) on the 500 shares, | 574 26-31 |
| Samuel C. Colt, | 574 26-31 |
| The children of Christopher, (except the oldest,) on the 400 shares, | 459 27-31 |
| L. P. Sargeant, | 57 15-31 |
| E. K. Root, | 57 15-31 |
| The executors, | 172 14-31 |
|  | 5,346 |

In the above event, the plaintiffs claim to be entitled to receive, as their 574 26-31 shares of the 5,346, the 574 26-31 shares now in the hands of the executors, and to be entitled to the dividends from the death of the testator on the 574 26-31 shares. The amount of those dividends they represent to be 226 per cent., being a total of over $140,000.

The plaintiffs further contend that, if it be held that James B. Colt was entitled to a life-estate in some of the 5,346 shares, and also that the executors, in trust for the children of Christopher, (except the oldest,) were entitled to some of the 5,346 shares, based on the primary legacy to the executors, in trust for said children, of 500 shares, then the distribution of the 5,346 shares would be as follows:

|  | SHARES. |
|---|---|
| Mrs. S. Colt, for life, | 1,038 6-103 |
| The two surviving children, | 1,038 6-103 |
| The two deceased children, (intestate estate,) | 1,038 6-103 |
| The executors, in trust for the children of Christopher, (except the oldest,) on the 500 shares, | 519 3-103 |
| James B. Colt, for life, | 519 3-103 |
| Samuel C. Colt, | 519 3-103 |
| The children of Christopher, (except the oldest,) on the 400 shares, | 415 23-103 |
| L. P. Sargeant, | 51 93-103 |
| E. K. Root, | 51 93-103 |
| The executors, | 155 73-103 |
|  | 5,346 |

In the last above named event, the plaintiffs claim that the increase of shares given to each legatee by the exclusion of the executors, as trustees for the children of Christopher, (except the oldest,) from sharing in the residuary stock, in respect of the 500 shares, was as follows:

|  | SHARES. |
|---|---|
| Mrs. S. Colt, for life, | 111.62 |
| The two surviving children, | 111.62 |
| The two deceased children, (intestate estate,) | 111.62 |
| James B. Colt, for life, | 55.81 |
| Samuel C. Colt, | 55.81 |
| The children of Christopher, (except the oldest,) on the 400 shares, | 44.65 |
| L. P. Sargeant, | 5.58 |
| E. K. Root, | 5.58 |
| The executors, | 16.74 |
|  | 519.03 |

They also claim that, while the trustees are responsible to them for so many of said 519.03 shares as belong to said trustees, said trustees have a right to resort to each of the above recipients for the shares so received by said recipients, and which rightfully belonged to the trustees for the plaintiffs; that, taking out from the 574 26-31 shares now in the hands of the executors as the James B. Colt life-stock the 55.81 excessive shares he enjoyed the use of, and giving them to the plaintiffs, there remain

to be distributed among the legatees, including the plaintiffs, 519 3-103 shares, as follows:

| | SHARES. |
|---|---|
| Mrs. S. Colt, | 111.62 |
| The two surviving children, | 111.62 |
| The two deceased children, (intestate estate,) | 111.62 |
| The executors, in trust for the children of Christopher, (except the oldest,) on the 500 shares, | 55.81 |
| Samuel C. Colt, | 55.81 |
| The children of Christopher, (except the oldest,) on the 400 shares, | 44.65 |
| L. P. Sargeant, | 5.58 |
| E. K. Root, | 5.58 |
| The executors, | 16.74 |
| | 519.03 |

They also claim that, under the right of the trustees so to resort or recoup, as the amounts of stock so to be recouped happen to correspond to the amount each legatee is entitled to in such distribution, the entire stock may be taken in recoupment; that the plaintiffs would thus have received, through their trustees, under a proper distribution, in the first place, 519 3-103 shares more than they received, with the accumulation thereon from the death of the testator; and that they are also thus entitled, by the death of James B. Colt, to 55.81 shares of the 574 26-31 shares which James B. had for his life, and which are now to be distributed, with the accumulations thereon since the death of James B., thus entitling them to all the 574 26-31 shares. In respect, however, to those accumulations, the plaintiffs, in either of the above two views of distribution, waive all claim against the trustees personally for any dividends which went to L. P. Sargeant, E. K. Root, or James B. Colt, and insist only on the dividends which went to Mrs. S. Colt and her children, and to Hubbard and Jarvis and to Samuel C. Colt, being the dividends on 407.41 shares, and which they represent to amount to over $100,000. It is thus seen that the pecuniary amount involved in this suit is considerable. The stock claimed is within the control of the executors, but the dividends claimed have been received by the parties who are now called upon to refund them. It is contended by the plaintiffs that their trustees can resort for these dividends to the parties defendant to whom the stock was erroneously distributed.

Elizabeth H. Colt, Mr. Hubbard, and Mr. Jarvis have put in a full answer to the bill. Samuel C. Colt by answer adopts it, and so does Elizabeth H. Colt, as guardian of Caldwell H. Colt. Alice Colt, Norman Colt, and James Colt, the children of James B. Colt, answer, denying that the plaintiffs are entitled to any part of the 574 26-31 shares in which James B. enjoyed a life-estate, and alleging that James B. was entitled to a fee in said shares, and that they, as his only heirs at law, are entitled to a fee in said shares; also denying that their interest in the residuum of the stock, in respect to the legacy of 500 shares given to the executors in trust for the lawful issue of James B., was taken away by any codicil, and claiming that they are entitled to a share in said residuum

in respect to said legacy of 500 shares, and claiming that there was no revocation of their interest in said residuum; and admitting all the other allegations in the bill not inconsistent with said denials.   No other answers appear to have been put in to the bill, nor does it appear whether the other defendants have been served with process.

The answer of Elizabeth H. Colt, Hubbard, and Jarvis is joint.   It admits that they have the 574 26-31 shares, the income of which they paid to James B. during his life, and that he is dead.   It avers that the said Isabella, Le Baron B., and Samuel P., and also Edward D., were made parties to the petition of James B., and were duly served with process therein; that at that time the said Theodora D. was the mother of the said Edward, Le Baron, and Samuel, who were then minors, and was then their legal guardian, and, in her capacity as such guardian, was made a party to said proceedings, and served with process therein; that all the plaintiffs and defendants in the present bill, or those who then legally represented them, were also made parties to those proceedings; that said minors and their said guardian did in fact appear in said suit, by counsel employed for them, to-wit, Henry C. Robinson, of Hartford, at the term of the court to which said proceedings were made returnable, and did appear and become parties to said proceedings, and was duly heard therein by said counsel, who was so employed by them; that in the decree of said court it was found as a fact that the parties to said proceedings appeared by their respective counsel, and the said minors were duly represented by their guardians; that the said decree in said cause imports absolute verity, and is conclusive as to the matters so found, and is binding and conclusive on the plaintiffs; and that, according to the law and practice in the state of Connecticut, when minors are made defendants in an action at law or in equity, and they have a duly-appointed guardian, which guardian is cited to appear, and does appear, in the suit, it is not usual or necessary to have any special guardian *ad litem* appointed.   The answer recites the said contents of the said decree or judgment of March term, 1866, and alleges that it is in full force; that, in pursuance of it, and in accordance with it, they did thereupon divide up and transfer, to and among the respective persons so held thereby to be entitled to the same, the whole of said residuum of stock, and thereupon filed in the court of probate for the district of Hartford their account, as executors, of the settlement of said estate, showing the disposition so made by them of the residuum of said stock, and also of that specifically devised, which said account was, on the 2d of July, 1866, legally allowed by said court, and said allowance is in full force; that afterwards the said court of probate duly appointed distributors to distribute all the testate estate not specifically devised, and they made such distribution, and the same was, on the 14th of July, 1866, returned to said court, and was by it approved, and is still in full force; that on the 5th of August, 1870, and the 10th of January, 1873, they filed further accounts of the settlement of said estate as such executors, by which said estate was finally settled, which accounts were, on said respective days, allowed by said court, and said allowance is in

full force; and that said decree of said superior court, and the orders of said court of probate, in the settlement of said estate, and the conveyances of said stock in accordance therewith, are final and conclusive as to all matters therein contained, as against the plaintiffs, and a bar to the further prosecution of this bill, so far as the rights of the plaintiffs to any part of the residuary stock are concerned. It denies that the plaintiffs are or were entitled to any more shares of said residuum than they have received, or any accumulations thereon. It sets up the said proceedings which took place on the 11th of January, 1873, the said receipts and discharges given to the trustees, and the said receipt and discharge given to the executors, the former as a settlement of all matters connected with the said trust stock, and the latter as a settlement of all claims of the plaintiffs against the estate, under the will or otherwise, and against the defendants as executors. As to so much of the bill as refers to their action in the suit of James B., the answer avers that they were cited to appear therein as executors of said will, and did appear therein; that they employed counsel in whom they had confidence, to-wit, Benjamin R. Curtis, Origen S. Seymour, and William W. McFarland, to appear in said cause, and present such questions for the consideration of said court, regarding the construction of said will, as to them should appear well founded in the law, which was so done by said counsel; and that the defendants, as such executors, "did not appear or act particularly as trustees for or on behalf" of the plaintiffs, because the plaintiffs were duly made parties to the proceedings, by themselves and by their guardian, and appeared therein by able counsel, and were fully heard. As to so much of the bill as asks for the whole or any part of said 574 26-31 shares of stock in which a life-estate was given to said James B., the answer says that the defendants hold the same as executors for the persons duly entitled thereto under the will, and are ready to dispose of the same in accordance with the orders of any proper court having jurisdiction thereof; and it submits to the court the question whether or not the distribution of said shares does not by law appertain to the probate court for the district of Hartford, in which such estate was settled.

It is important, in the first place, to see what was decided by the supreme court of errors, and the scope of the decisions, as to parties and subject-matter. It is evident that James B. Colt, the plaintiff in the suit, supposed that he was bringing before the court, and in the proper way to make the decree in the suit not only binding, but final, all the parties whose interests could be affected by the decree for which he asked. The petition avers that the respondents to it have or claim some interest in the residuary stock, (that alone being the subject-matter,) and that it is necessary that each of them should be made parties to the proceedings, "that their respective rights in said residuum may be so ascertained and fixed as to be binding on all said parties." This was the scope of the suit, and the petition accordingly prayed that the court would "ascertain and fix the amount of said residuum, and the parties entitled thereto, and their proportions under said will." It

was necessary that the court should do so, in order to enable it to comply with the further prayer of the petition, to ascertain and fix the number of shares in which the petitioner has an interest under said will. As the petition and the will and the codicils disclosed who were parties interested, and showed that the executors were trustees for the children of Christopher in respect of the 500 shares, and that some, and who, of such children were minors, and that the executors, as such, and said minors, and the guardian of said minors, were parties, and as it appeared that all of them, and all other parties to the suit, had been served with process in it, it is manifest that the two Connecticut courts and the parties defendant and their counsel must have believed that there was no defect of parties. No suggestion to such purport appears to have been made by any party or counsel or court; whereas, if there was any such defect of parties, such suggestion was as obvious, then, to the experienced counsel and the learned courts as it can now be to any one in this suit. It was the interest of all persons then before the superior court that all the proper parties should be before the court, as the residuary stock was to be adjudicated upon and disposed of, and it was distributed under the decree which was made. It would certainly be a most extraordinary result if Connecticut counsel and Connecticut courts could be held to have been so wanting in discernment as to have permitted the rights of minors to be adjudged without a proper representation before the court of the minors, and of those having the legal title to the property in which the minors were interested. Nor can it be supposed that this point passed *sub silentio*. The question of proper parties was one so important to be considered that it must have been considered; and the fact that no suggestion in regard to it was raised by parties or court proves quite as much that a suggestion as to defect of parties occurred, and was rejected as without foundation, as it does that it did not occur; while if, when it occurred, it appeared to have the semblance of soundness in it, it would have been formally raised. It appears in 32 Conn. that Mr. McFarland, in arguing in support of the demurrer, and urging that the proper forum for the suit was the court of probate, and making other objections to the bill, did not contend that the petition was demurrable for want of parties, but urged that the bill involved a settlement of the estate and of the rights of all parties in it.

The main question considered by the supreme court of errors in 32 Conn. was whether the revocation, in the first codicil, of the legacy of 500 shares, which the will had given to James B. for life, with remainder to his issue absolutely, applied to and canceled the bequest to James B. Colt in the will of his ratable proportion of the residuary stock. The court said that, but for the provision in said codicil, James B. would have had at least a life-estate in 500 shares, and at least a life-estate in his ratable proportion of the residue of stock not specifically bequeathed. Guided by the principle that it must be governed by the intention of the testator, to be determined by settled rules, which rules it distinctly lays down, it arrived at the conclusion that the bequest of a share of the

residuary stock to James B. had not been revoked. The rules, as it stated them, were these:

"(1) The construction is to be put upon the instrument as a whole, and not upon detached portions of it. (2) If there is a codicil, that is to be read in connection with the will, and the construction is to be put upon the whole, as one instrument. (3) The intention is to be inferred from the language used by the testator, explained, if necessary, by parol proof of such extrinsic circumstances as will throw light upon the meaning of the words used. (4) The court is not at liberty to indulge in conjecture as to what the testator would have done if a particular subject had been brought to his attention, or as to what he may have supposed he had done by the language used in his will. (5) The different parts of a will, or of a will and codicil, should be reconciled, if possible. (6) Where a bequest has been once made, it should not be considered as revoked, unless no other construction can be fairly put upon the language used by the testator."

Nowhere are the true rules for interpreting a will and a codicil, with a view to ascertain the intention of the testator, more appositely or more tersely stated. The court remarked that the revocation was only of the legacy of 500 shares, which was, plainly, the first 500 shares; that the bequest of the residuary shares was in a different clause of the will from the bequest of the first 500 shares to James B., and had no reference to the first clause, except for the purpose of describing the legatees; that James B. was as well specified to be a legatee of residuary stock by describing him as already a legatee as if the bequest had been of a given number of shares of residuary stock to him by name in the residuary clause; and that the revocation in regard to James B. was specific, and not in general terms, as in the second codicil, in respect to the children of James B., revoking all legacies before made to them, or for their use. The respondents in that case urged that the will and the codicil ought to be read as of the date of the codicil, and that, therefore, after the codicil was executed, James B. was no longer a legatee of the 500 shares, and so the bequest of the residuary shares would not apply to him. To this the court replied that reading the will as of the date of the codicil would not strike out of the will the clause containing the legacy of 500 shares, but would have the effect merely to insert the codicil as the last clause in the will, and the bequest of the residue, to be divided among those "to whom I have hereinbefore given legacies of stock," would still have the construction which the court had given to it. The respondents in that case also urged that the bequest of residuary stock was auxiliary to the previous bequest, and that with the revocation of the earlier one the later one fell. To this the court replied that the rule had no application to these bequests; that there was no connection between different shares of stock, and no common use of them, and they could be held with equal convenience separately or together; that no case could be found where it had been held that a revocation of one devise operates as a revocation of another devise of merely the same kind of property; that there would be no propriety in such a rule, and no reason for its adoption; and that the implication of a revocation of one legacy from the express specific revocation of another arises solely from the dependence of

the former on the latter. The court further observed that the statement in the codicil of the dissatisfaction of the testator with the conduct of James B. would alone be no ground for implying a revocation, though in the case of a doubtful construction it might, perhaps, turn the scale. The court then alluded to the argument that there was virtually but one legacy to James B., because the testator had determined to divide all of the stock among certain persons in certain proportions, and, not being certain how much there would be at his death, gave certain specified amounts to the legatees, in the proportion in which he intended to divide the whole, and then gave, as a part of the same bequest, the indefinite residue in the same proportions, adopting this course in lieu of bequeathing the whole at once, in proportion to certain numbers. To this argument the court replied that the most that could be said of it with any certainty was "that this may have been his intention;" that the claim was not corroborated by anything in the will or codicils, unless it might be the unfriendly feeling exhibited by the testator towards James B.; and that, on the other hand, the facts that the bequests are in form separate, that the bequest of stock to James B. is conditional, while the bequest of residuary stock is not; that the revocation names specifically the first bequest, and that it was improbable the testator would neglect to make any bequest to a brother, were particulars, all of which were calculated to favor a different construction. The court added that, it being settled that a second legacy will never be presumed to be a dependent legacy, but that, on the contrary, every legacy independent in its terms will be presumed to be independent, and to make it otherwise a clear intention must appear on the face of the will, or will and codicil, it followed that the second legacy to James B. must be regarded as an independent legacy, and, consequently, not affected by the revocation. On the point taken, that the remedy was not in the superior court, but was in the court of probate, the court said that, on the allegations of the petition, the time had arrived for the payment of the legacies; that they were payable by force of the will itself, and it required no action of the court of probate to give the legatees a right to recover them; that a suit would lie to recover the legacy; and that, the legacy being one of specific shares of stock, a suit in equity in the superior court would lie to enforce the transfer of the stock, and it would also lie for an accounting in regard to the dividends which had been received on the stock by the defendants in a fiduciary capacity.

It is true that this decision on the demurrer, establishing the right of James B., did not directly decide against the right of the children of Christopher. The clause in the original will, giving 500 shares in trust for the issue of James B.; and the clauses in the second codicil, revoking all legacies to or for the use of said issue; and giving to the children of Christopher a bequest, were not under direct consideration, or involved, in the decision on the demurrer. But the supreme court of errors, having decided, on the demurrer, in 32 Conn., that the residuum of stock was given independently by the will to the persons and parties to whom stock had before in the will been given, and, so, that a share in

the residuum was given to James B., held, in 33 Conn., when called on to pass on the rights of the children of Christopher in the residuum, in respect of their 500 shares, the converse of the same proposition, and decided that it logically followed from their prior decision that persons and parties to whom stock had not before in the will been given could not take stock under the residuary clause, and, so, that a share in the residuum was not given to the children of Christopher in respect of their 500 shares. Acting on the view that the one decision may logically follow from the other, while at the same time contending that the one decision does not logically follow from the other, the plaintiffs' counsel have, in argument, addressed themselves to undertaking to show that the decision of the Connecticut court in favor of the right of James B. was erroneous, with a view of getting rid of the effects of the construction which was put on the will and the first codicil in the decision on the demurrer. This they have done, assuming that it is open to the plaintiffs to have the question considered anew in this suit, as if it had never been raised in the former suit, because of the before mentioned alleged defects as to parties in the former suit.

The view of the plaintiffs' counsel is that the proper construction of the will and codicils is such that, if James B. can have no right to a share in the residuary stock, the children of Christopher must, for the same reason, have a right to a share in it, in respect of the bequest given to them in the second codicil. It is proper, therefore, to consider such right of James B. in the light of the views now urged. The arguments of counsel against the right of James B. are set forth in the report in 32 Conn. The leading counsel for the defendants was Mr. B. R. Curtis, of Boston. He urged that on the three papers, taken as one testamentary act, the testator did not intend that the residuary stock should go to any persons who were not prior legatees of stock; that he meant that a class of persons should have the residuum divided among them; that the exclusion of a person from the class excludes him from sharing in the residuum; that the revocation of legacies of stock by the codicils had the effect to make the revocations increase the residuum; that this increase was intended for the benefit of the specific prior legatees, in the proportions of their legacies; that, in view of the confirming clause at the end of the second codicil, the will was to be construed as if the original had been rewritten as altered, omitting the revoked parts, and substituting new legacies in place of old ones revoked; that it was to be read as if written at the date of the last codicil, and with all the revoked legacies omitted and the substituted legacies inserted; that, under that rule, the will could no longer speak of James B. as the legatee of 500 shares, and, if it could not speak of him as such a legatee, it could not as a legatee under the residuary legacy, which gives the remaining stock to the prior legatees of stock; and that, under the opposite construction, the 500 shares originally given to James B. fall into the residuum, and James B., if taking a share of such residuum, takes a part of the very 500 shares which the testator had declared he should not take. In such references to substituted legacies, the legacy of stock

in the second codicil to the children of Christopher would come under observation as a legacy substituted in place of the legacy in the original will of stock in trust for the issue of James B. The views urged by Mr. Curtis received the attention of the court, as appears by the decision.

The principal contention of the plaintiffs' counsel on this branch of the case is that the legacy of the proportional part of the residuum of stock to each legatee of it is united with each primary legacy of stock, so that the revocation of the primary legacy to James B. revoked also the legacy united with it, or accompanying it, of the proportional part of the residuum of stock. Stress is laid on these words in the will— "meaning that my residuary estate in said stock shall be shared by the same persons to whom I have given specified legacies in stock, and in precisely the same ratable proportions"—as having the effect, notwithstanding the prior words, "hereinbefore given," to cause every primary legacy of stock, whenever made, by the will or codicil, especially in view of the confirming clause in the second codicil, to carry with it its ratable proportion of residuary stock. This is referred to as establishing a union, binding up the two portions of the stock in one common disposition, and as enabling the testator to revoke or increase or diminish a primary legacy of stock, and so effect a similar change in the residuary stock, without ever mentioning the residuary stock. This view of the proper construction of the will does not appear to be the proper one. The reasons assigned by the Connecticut court for regarding the primary bequests and the residuary bequests as independent of each other, and not united, seem to be unanswerable. If independent, the conclusion arrived at as to James B. was inevitable. The rules laid down by the Connecticut court, as those which it followed, were based on authorities cited by the counsel for James B., and which are found in the report in 32 Conn. One of the most pertinent cases is that of *Roach* v. *Haynes*, 6 Ves. 153. One Haynes, having a power of appointment under the will of one Franco, in respect to certain annuities, gave them and certain specific articles by will to trustees, in trust for her residuary legatee, "hereinafter named." All her estate not thereinbefore disposed of she gave to her son David. Afterwards she made a codicil, reciting that she had, by her will, given to her son William £1,000, and the residue of her estate to her son David, and certain other legacies, and revoking "all the above bequests," and giving the residue of her estate and effects to her sons William and David, equally between them, and giving certain pecuniary and specific legacies; and adding that, with these alterations, she confirmed her will, revoking all other codicils, and declaring that to be the only codicil to her said will. David claimed to be solely entitled, William claimed to be entitled jointly with David, and residuary legatees of Franco claimed the fund as undisposed of. The case came before Sir WILLIAM GRANT, master of the rolls. For David it was contended that, although he was, by the codicil, deprived of the description of sole residuary legatee, the codicil had no reference to the execution of the power of appointment, the fund not being given as a part of the residue; and that, as the codicil was directed to operate as a revoca-

tion of distinct parts of the will, it could not operate beyond that.    For William it was urged that by the will the fund was united to the general personal estate, and the gift of the whole, fund and residue, to David by the will showed an intention not to distinguish between the fund and the general personal estate, and that thus the revocation of the residuary bequest to David, and the gift of the residue to the two, carried the fund to the two.    For the residuary legatees under the will of Franco it was contended that the codicil entirely revoked the residuary bequest in the will, and in giving "the residue" gave only the residuary personal estate, and had no reference to the fund.    The court held that the will separated from the residue the annuities and the specific articles, and vested them in trustees, and then gave the residue directly, and without the interposition of trustee, to David; that this was an appointment for the benefit of the person to whom she should give the residue, who turned out to be David; that, as the annuities and the specified articles had been separated from the residue, the revocation of the residue did not extend to them, and did not affect the fund; that the claim of the residuary legatees of Franco must be rejected; and that David was solely entitled.    The shares of stock in the present case, in the primary legacies and in the residuary legacies, were the same kind of property, as is said in *Colt* v. *Colt*, in 32 Conn., but so the general personal estate, given as the residue in *Roach* v. *Haynes*, was the same kind of property with the specific articles given to the trustees with the capital of the annuities.    As Sir WILLIAM GRANT remarked, the revocation of the bequest of the residue did not extend to the specific articles, because the intention was manifest in the will not to include the specific articles in the residue, and, if David was to have the specific articles, notwithstanding the codicil, he must also have the capital of the annuities, which the will had separated, equally with the specific articles, from the residue. In the present case the shares of stock given by the primary legacies were no part of the residuary stock, and the legacy of them was as distinct from the legacy of the residuary shares as if the residuary stock had been shares in a different corporation.

In *Hall* v. *Severne*, 9 Sim. 515, a testator by will gave pecuniary individual legacies, and, among them, £100 to one Bannister.    It then directed his executors and trustees to divide the residue of his stocks and funds among "all and every the before mentioned individual legatees," in the proportions that their several personal legacies "hereinbefore given and bequeathed to them" should bear to the produce of the residue.    By a codicil, which he directed to be added to and taken as part of his will, he gave a legacy of £200 to the same Bannister, and pecuniary legacies to others, who were legatees under the will, and declared that the legacies in the codicil were given to the legatees therein mentioned, in addition to what he had given to them, or any of them, by his will.    The question arose whether the legatees under the codicil were entitled to share in the residue with the legatees under the will.    For Bannister it was contended that, as the testator had directed that the codicil should be taken as a part of the will, the will was to be read as if it contained

a gift of £300 to Bannister; and that, under the declaration in the codicil that the legacies given by it were to be in addition to those given by the will, the additional legacy to Bannister must partake of all the incidents of the prior one, and carry with it a share of the residue. The court (Sir LANCELOT SHADWELL, Vice-Chancellor) held that, under the will, the persons who were to take the residue were the legatees named in the will; that the proportions in which they were to take it were the proportions which the legacies thereinbefore given to them, respectively, bore to the amount of the residue; and that, under the codicil, the legacy of £200 to Bannister was a substantive gift of £200, declared to be in addition to the gift of £100 in the will, but did not carry a further share of the residue in proportion to itself. The principle of this decision would lead to the conclusion that, even if the codicil had revoked the legacy of £100 given to Bannister by the will, Bannister would have shared in the residue; and it is a direct authority for holding that the substantive gift of stock to the children of Christopher, in the second codicil, does not carry a share of the residuary stock in proportion to itself.

In *Wetmore* v. *Parker*, 52 N. Y. 450, the testatrix, by her will, gave $10,000 to a church, to complete its edifice or pay any debt therefor, and, if not required for that purpose, then to be invested, and the income expended by the trustees of the church for its use and benefit. She also, by her will, gave to an academy $10,000, to erect its edifice, or pay any debt therefor, or, if the building should be completed and paid for before the bequest should take effect, then to be expended by the trustees of the academy for certain specified objects. The will bequeathed the residue of the estate "to the several persons, corporations, and societies to whom I have hereinbefore made bequests, and who shall be living and existing, and able to take the same, in proportion to the amounts given and bequeathed to them, respectively." Afterwards she made a codicil, in which, after reciting the bequest to the academy, and that she had given $3,000 to it, "intending the same to be part of, and to be paid in anticipation of, so much of said legacy,  *  *  * therefore" she revoked "the bequest of $3,000, part of the said sum of $10,000," and bequeathed to the academy "the sum of $7,000 instead of $10,000, to be expended by the trustees thereof for the purposes of, and in the manner prescribed in and by," the will. Afterwards she made another codicil, in which, after reciting that she had by the will given $10,000 to the church, for the purpose, principally, of aiding in erecting its edifice, and in paying any debt that might be thereby incurred, and that it now appeared probable that said purpose would soon be accomplished, and that she had concluded to give at that time $3,000 towards extinguishing said debt, she revoked said bequest of $10,000 to said church. The court of appeals, in deciding the case, remarked that the bequests were all of money, and that, by virtue of the directions in the will, the whole property was to be deemed converted into personalty at the death of the testatrix. The court considered the question whether it was the intention of the testatrix, by

the revocations, to deprive the church of all share in the residuary estate, and to restrict the academy to the proportion of the residue represented by $7,000, instead of $10,000. It referred to the rules that, in ascertaining and carrying out the intention of the testator, as the primary object in construing wills, a codicil will not be allowed to operate as a revocation, beyond the clear import of its language; that an expressed intention to make an alteration in a will in one particular negatives by implication an intention to alter it in any other respect; and that the language employed must be scrutinized with care, not only in the particular parts, but in every part, of the instrument, in order, as far as practicable, to ascertain the operation and intent of the mind using it. The conclusion of the court was that the two codicils did not operate to cut off or impair the right of the academy or of the church to share in the residue of the estate. It was held, as to the academy, that the two bequests were not dependent, although the reference to the first in the last designated the legatee and the amount; that the one legacy was for particular purposes, and the other for general purposes; that the legal effect of the will was to designate the academy as a residuary legatee for an amount made certain by mere arithmetical calculation, as effectually as if the name and amount were written out; that the testatrix paid $3,000 upon the specific legacy in her life-time, and revoked $3,000 of it, in language carefully confined to that alone; that, if she had intended to affect the other bequest, it must be presumed she would have said so; that the will and codicils bore evidence of particularity of expression as to every testamentary arrangement, and, within the rule referred to, the alteration of one bequest negatived an intention to alter the other; that, if she had paid the whole $10,000 while she lived, that would not tend to show an intent that the other should not take effect, but would evince a continued testamentary friendship; that the reasons for revocation applied only to the specific legacies, showing that the testatrix regarded the two as independent; and that the right of the church to the residuary legacy was substantially the same as that of the academy, and for the same reasons.

The court considered the argument that the will and the codicils must be construed together, speaking only from the death of the testatrix, and that, therefore, the whole will should be construed, for all purposes, as though the bequest to the church was not in the will at all, and that to the academy was $7,000 at the time the will was made. It said that that proposition, as a whole, could not be sustained, being in conflict with the rule that it must be ascertained, from all the testator has said, what he intended; that a will is to speak from its date, when a fair construction of its language indicates such intention; that a reference to an actually existing state of things in a will refers to the date of the will; that that rule is applicable to both property bequeathed and to legatees entitled to take; that the general rule is that, if a bequest is made to one sustaining a particular relation, and there is such a person in being at the date of the will, it is descriptive of that person; that, whatever exceptions there are to the rule, the rule and exceptions are established, to reach the intent of the

testator; that the revoked legacies, though out of the will as legacies, may be referred to if they throw light upon other portions of the will; that, when the testatrix said, in the residuary clause, "I give to the persons to whom I have *hereinbefore* made bequests," she referred to an existing description, and the court must adopt the same description; that "hereinbefore" means "in this will as it *now* exists;" that the language of the will and codicils, the circumstances developed, and the rules of law concurred in not permitting the conclusion that the testatrix intended that her residuary estate should go to those only who had unpaid or unrevoked specific bequests at her death; and that no such intimation was contained either in the will or the codicils, nor had any reason been suggested for such an intention.   The court then cited the case of *Colt* v. *Colt*, in 32 Conn., as deciding the precise question in accordance with the views it had so expressed, and in a case not as favorable to the legatee, having less elements of independence in the legacies, and having a change of friendly relations between the testator and the legatees stated in the revoking codicil.   The court then referred to the case of *Hayes* v. *Hayes*, 21 N. J. Eq. 265, which is cited by the plaintiffs here, and distinguished it.   The will made bequests to various persons.   In the residuary clause it was stated that the specific bequests amounted to $70,000, and that, if the estate amounted to more or less than that sum, they were to be increased, or diminished in proportion, so as to absorb the whole estate.   In a codicil the testator revoked, partially and entirely, bequests to the amount of $7,000, and directed that this sum should be apportioned among certain remaining legatees.   It was held that the residue must be divided among the legatees in proportion to the amount to each, after the addition or deduction of the $7,000, according to the terms of the codicil.   This was upon the ground that the specific and residuary legacies constituted but one legacy to each legatee, and were dependent.

The fact that the bequest of stock in this case to the executors was made to "my executors hereinafter appointed," and that, when the first codicil revoked the appointment of Deming as executor, and appointed Jarvis in his place, still, although there was no provision directly giving to Jarvis the legacies of primary and residuary stock, it was held that he was entitled to them, and Deming was not, is referred to by the plaintiffs as showing that such legacies passed to Jarvis, because the word "hereinafter" referred to the will and codicils combined, and that a similar construction should be given to the word "hereinbefore."   But the court put its decision, not on that ground, but on the ground that the bequest to the executors was to them as parties, and as "hereinafter appointed," and not as persons, and was compensatory, and intended for those who should perform the trust.   The plaintiffs also refer to the fact that the original will gave 25 shares of the stock to Alden, on certain conditions, and the first codicil gave him 50 shares of it, in lieu of the 25 shares, on the same conditions; and they contend that the testator intended he should share in the residuary stock in proportion to the 50 shares.   But this is begging the question, and the views above laid down

show that Alden could have shared in the residuary stock only in respect to the 25 shares. The plaintiffs also refer to the revocation, in the first codicil, of "the legacy" given by the original will to the oldest son of Christopher, and say that the original will contained two legacies in respect to him,—primary and residuary,—yet both legacies must be regarded as having been revoked; and that this could be only on the view that "the legacy" was mentioned as the primary legacy, and as the representative of the whole, so that revoking the primary legacy revoked the gift of its corresponding residuary stock. There is nothing in the reasoning in *Colt* v. *Colt* which would justify the conclusion that the revocation could operate only on the primary legacy to the oldest son of Christopher. "The legacy" may well mean all that is given as a legacy, or by way of legacy, whether primary stock or residuary stock; but that is very different from revoking a legacy of 500 shares, or of any other specific number of shares. The same remarks apply to the revocation, in the second codicil, of "the legacy" given "by said original will and codicil" to trustees for founding the school. In that case there were legacies to such trustees, by the original will, of primary and residuary stock, and a legacy of primary stock to such trustees by the first codicil; yet, in the second codicil, all these legacies are grouped together in the revocation, as "the legacy" and as "said bequest."

Much stress is laid by the plaintiffs on the facts that the revocation in respect to James B. is because of "his late unbrotherly conduct;" that the children of James B. are cut off by the second codicil, which it is alleged shows further alienation from James B.; and that the revocation of the primary bequests for the school threw 3,000 shares of stock into the residuum, and left that quantity and its proportion of residuary stock to be divided among the other legatees, largely increasing the amount of each of the other residuary legacies. From this it is urged that it cannot be supposed the testator intended, while cutting off the primary legacy of stock to James B. and all the legacies to his children, to leave to James B. more than 574 shares of the residuum, while taking from him a primary legacy of only 500 shares, and thus give him a part of the very stock he was taking away. The complete answer to these suggestions is that, after the testator had, by the will, given a specific legacy of stock to James B. for life, remainder to his issue, and a specific legacy of other stock to trustees for said issue, and had made a residuary clause, such that James B. and his issue on the one legacy, and the trustees for his issue on the other legacy, would share in the residuary stock in proportion to such legacy, he, with these things fully before his mind, revokes, in the first codicil, the legacy of 500 shares "given in the aforesaid will to James B. Colt for life, remainder to his children," and does not revoke any share of James B. in the residuary stock, and afterwards, in the second codicil, which refers to the first codicil and its contents, gives to each child of James B. $100, and revokes "any and all other legacies or devises by me heretofore at any time made to or for the use and benefit" of the children of James B., or any of them, and does not revoke all or any legacies theretofore at any time made to James B.

It is further urged by the plaintiffs that, as there was a division of some of the stock, made by the will and the codicils, in specific legacies, to precede a' second division of the residue of the stock, to be made by the executors in the future, the word "hereinbefore" should be divided into two words, "herein" and "before," and "herein" should be held to mean in the will and the codicils, and "before" should be held to apply to all legacies which precede the distribution to be made of the residue, whether such legacies are found in the will or in a codicil, so as to make the residuary clause read: that the remaining stock shall be divided among the several persons and parties "to whom I have herein" —that is, in the will and codicils—"before"—that is, in the first division effected by the primary legacies in the will and codicils—"given legacies of stock, in the ratio and proportion in which said legacies of stock are herein"—that is, in the will and codicils—"before given," —that is, in the primary division effected by the will and codicils, which division precedes the' division to be made of the residue,— "meaning, that my residuary estate in said stock shall be shared by the same persons to whom I have"—that is, in the will an l codicils—"given specified legacies in stock, and in precisely the same ratable proportions." This view is ingenious, but very unsound. It wrests the plain and straightforward meaning of the word "hereinbefore," and substitutes for it a fanciful division of the word into two words, to each of which is attributed a fanciful meaning, not in accordance with ordi‐ nary meaning, and having no basis except an inspiration from the result sought.

We come now to consider the bequest in the original will to trustees for the issue of James B., and the provisions of the second codicil as to the children of James B. and as to the children of Christopher. In so far as the views before announced in regard to the right of James B. to share in the residuary stock lead to the conclusion that he had such a right, they also lead to the conclusion that the children of Christopher have no such right in respect of their primary legacy of 500 shares. That conclusion follows logically from the conclusion in regard to James B., as was said by the court in 33 Conn. But the plaintiffs present another view, which they claim was not considered in *Colt* v. *Colt.* They contend that, without regard to what construction is put on the will and codicils, in respect to the questions actually considered in *Colt* v. *Colt,* the second codicil does not work a revocation of the legacy of 500 shares given to the executors in trust by the will, with a trust for the issue of James B., but merely effects a substitution of the children of Christopher, as *cestuis que trustent,* in place of the children of James B.; the gift of the stock to the executors in trust remaining undisturbed. It is contended that the Connecticut court left out of view the consideration that the gift by the will of the legal title in the 500 shares to the trustees was not revoked; that the will gave the stock, the legal title, to the trustees; that all it gave to the children of James B. was the use and benefit of the stock; that such use and benefit was withdrawn by the second codicil; and that the language of the gift to the children of Christopher, in place

of the children of James B., is such as to make the case one of a substitution of the former for the latter, and so one where the interest given to the latter by the will in the residuary stock was transferred by substitution by the second codicil to the former. The bequest in the original will was not to the children of James B., but was to the "executors, and their successors in said office," in trust for the issue of James B., the issue to have the stock when the youngest survivor should have reached the age of 21 years. By the second codicil, in the first place, a legacy of $100 is given to "each of the children" of James B., and then the codicil cancels and wholly revokes "any and all other legacies or devises by me heretofore at any time made to or for the use and benefit of said children, or any of them." This disposes of the legacy. It is taken away from the executors as trustees of it for any purpose, because the only purpose of it was for the use of the children of James B., and, as a legacy for their use, it is revoked. It is not merely the use or benefit that is revoked, leaving the legacy to stand, with a substituted use. The codicil next takes up the subject of the children of Christopher, and, after giving a legacy of $100 to the oldest son, and revoking all legacies before made in his favor, it proceeds:

"And I hereby give, bequeath, and devise to the other children of my said brother (said eldest son not being included herein) the property, to-wit, five hundred shares of the Colt's Patent Fire-Arms Manufacturing Company, which in and by said original will is bequeathed to my executors in trust for the use of the children of said James B. Colt, to have and to hold to said other children of the said Christopher in equal proportions. This last bequest is in trust for said children, and the property herein bequeathed is to be held by my executors for said children in the same manner, and subject to the same limitations, as are provided in said original will in the bequest to the children of said James B. Colt."

Here the legacy in respect to the children of James B. is referred to, first, as a legacy to the executors in trust for the use of said children, and then is referred to as a bequest to the children. It was clearly a bequest to the executors in trust for the children; but the form of words in the codicil shows that the testator drew no distinction between a legacy to a person and a legacy to his use. So the bequest to the children of Christopher is, first, a bequest to them, to have and to hold to them, and then is declared to be in trust for them, in the executors, on the same terms as provided in the original will in respect to the children of James B. Here, again, is no distinction between a legacy to a person and a legacy to his use. But the sum of all this is that the legacy is to the executors in trust. Still, it is as distinct a legacy from the legacy to the executors in trust for the children of James B. as that legacy was distinct from the devise of land to the executors in trust for the children of the testator, and from the bequest to the executors in trust for the school. The fact that the 500 shares covered by it are declared by the second codicil to be the 500 shares which had been given in trust for the children of James B., and the legacy of which had been before revoked in the same codicil, cannot make it a substituted legacy of such a character as to give to the children of Christopher

the same right to share in the residuary stock, in respect of it, which the children of James B. would have had in respect to the 500 shares given in trust for them by the original will. The reason for this conclusion is that the codicil revokes all the legacies to or for the use of the children of James B.,—the two legacies of stock, the primary and the residuary,—and then it does not give both of them to the children of Christopher, but only gives one of them, to-wit, 500 shares. That was the primary legacy in the original will. No other legacy of 500 shares was given to the children of James B. in the original will. The legacy to them in the residuary stock was not one of 500 shares. The case is no different from what it would have been if the original will had given two specific legacies of stock to the children of James B., one of 500 shares and one of 400 shares, and both had been revoked, and then the one of 500 given to the children of Christopher, without mentioning the other. They would not have been entitled to the other. As the codicil had just revoked all the legacies to or for the use of the children of James B., one of which was a legacy in the residuary stock, it was obvious and easy to have given a legacy of all the same stock to the children of Christopher, and not to have limited the legacy to 500 shares, in terms, if it had been intended to extend it beyond 500 shares. The subject must have been in the mind of the testator, in having just revoked all legacies to the children of James B., yet, when he saw that there was thus residuary stock revoked to the extent of more than the primary 500 shares, which would go into the residuum again, and, if not given to the children of Christopher, would go to the other persons entitled to share in it, he refrains from mentioning it, and limits the bequest to the children of Christopher, industriously, to 500 shares. There was nothing singular in augmenting the residuum of stock. The same codicil had just augmented it by the 3,000 shares previously devoted to the school trust, and by 25 shares before given to the oldest son of Christopher, the first codicil having also augmented it.

It is further contended for the plaintiffs that the bequest, in the second codicil, to the children of Christopher, is of all the property given by the original will to the executors in trust for the children of James B.; that the words "the property, to-wit, five hundred shares," etc., "which in and by said original will is bequeathed to my executors in trust for the use of the children of said James B. Colt," must be read as if they were "the property which in and by said original will is bequeathed to my executors in trust for the use of the children of said James B. Colt, to-wit, five hundred shares," etc.; that, in such case, the bequest would carry the property,—all of it, primary and residuary stock,—because that, and nothing less, is the property which the original will bequeathed, and the words following the words "to-wit" would be rejected as false description; and that, if the codicil does not give the residuary stock, it does not give "the property." It is by no means clear that in the present case, if the language were in the form so suggested, it would carry the residuary stock, because there was a specific legacy of 500 shares given by the original will to trustees for the children of James B., and

there was also a distinct legacy of residuary stock to such trustees, and the reference in the codicil to the legacy of 500 shares was not a false description. But, aside from this, the two distinct legacies existing, and one of them being of 500 shares, and properly so described, and in all respects otherwise properly recited, the gift of the subject of one of them as 500 shares must be held to control the words, "the property, to-wit." The case is not one where the testator had given, say, a legacy of 600 shares, and then referred to it as 500. Here were two distinct legacies, and his reference to 500 shares was needless surplusage if he meant to give all the shares, primary and residuary, he necessarily having both before his mind. The criticism that the language is "the property which is," and not "the 500 shares which are," has been observed, but is not considered of any weight. The words "the property, to-wit," are equivalent to no more than the words, "the property, consisting of 500 shares," etc., "which is," etc. This means no more than "the 500 shares," although the grammar of the sentence makes "is" proper. As has already been shown, it is a mistake to say that the original gift of the 500 shares to the executors in trust is not revoked, and that, therefore, they are "hereinbefore named" in the will, as respects the children of Christopher, in reference to the residuary stock. The second codicil does revoke the gift of the will to the executors in trust for one purpose, and does give to the executors in trust, for another purpose, a new gift of the 500 shares.

The case of *Lord Carrington v. Payne*, 5 Ves. 404, so much relied on by the plaintiffs, has no application to the facts of this case, even if it be regarded as good authority for any case. The case was decided in May, 1800, by Sir RICHARD PEPPER ARDEN, the master of the rolls, who in May, 1801, became Lord ALVANLEY. One Payne, by his will, devised real estate to trustees and their heirs, upon trust to convey upon certain trusts, and, subject thereto, to several natural sons successively, in strict settlement, and then directed that the residue of his personal estate should be laid out in land, "and that the estate so to be purchased should from time to time be settled to such uses, upon such trusts, and in such and the like manner, as I have hereinbefore directed respecting my real estate." He appointed the trustees named to be the executors. Afterwards he made a codicil, which recited that he had by his will directed his trustees to convey, settle, and assure certain real estates, and, on the settlement directed to be made of "my said estates," had directed that they should be limited in a certain specified manner, and then revoked so much of the will as directed the settlement, and, "instead thereof," directed "that in and by the settlement to be made of said estate, as aforesaid, the same estate be limited" in a manner specified. The change made in the limitation was to vary the order among the sons, and postpone William, an elder one, to younger ones. The question arose with respect to the fund directed to be laid out in real estate, whether the codicil postponing William to his younger brothers extended to that fund. The master of the rolls held that the real and personal estates were united by the will, and made into one settlement,

by which the persons named were to take in the course of succession marked out. It was contended in that case that the codicil revoked the devise, so far as respected the real estates of which the testator was seised at his death, and made new limitations, but left the estates to be purchased with the personal estate to go to the same persons, and in the same order, directed by the will in regard to the real estate given thereby. On this subject the court said:

"It was said that, when one species of property is devised in a particular manner, and in the same will another species of property is declared to be annexed to it, as it was in the case of *Darley* v. *Darley*, Amb. 653, or, where it is given to the same persons as the other estates, and, by act of law or by codicil the disposition of the former is revoked or altered, the latter shall not be revoked or altered, unless it is manifest the testator intended to affect that. I am willing, for the sake of argument, to admit this; but it does not in any way affect this case. I admit the testator does not, by these words, include the lands to be purchased; and if, by the will, he had given to certain persons the lands he was seised of, and had by that will directed his personal estate to be laid out in land for the benefit of the same persons to whom the real estate was devised, and, by a codicil, he had given the estates of which he was seised to different persons, and in a different manner, and had used no words applicable to the personal estate, the codicil might, upon those two cases, have the effect of disuniting them, and the personal estate would have gone to the same persons as if the codicil had never been made. This is the effect of *Lord Sidney Beauclerk* v. *Mead*, 2 Atk. 167. It was argued that the codicil in this case does not include the personal property to be laid out in the land, and then, considering the codicil as a revocation of the devise of the real estate, as it is silent with respect to the personal estate, that must, upon the authority of those two cases, go exactly as if that codicil had not been executed. But none of these arguments apply to this case, for this codicil does not revoke the devise of the real estate. It leaves the devise of the real estate to the trustees in full force. It does not in any degree disunite the estates to be purchased upon the settlement to be made of the real estate. It is therefore fallacious to argue that it was a revocation of the devise of the real estate at all. It remains devised to the trustees, and the only alteration is in the mode of succession to be directed in the settlement to be made. The will directed a settlement to certain uses, and gave the personal estate to be laid out in land to be settled to the same uses. * * * The will is not revoked as to the union of the two species of estates. The codicil makes no alteration with regard to that union, and, though the testator makes use of the word 'revoke,' the will is not a revocation as to that union, but merely an alteration of the order of the limitations to be inserted in the settlement; and it is no more than if the devisor, with his own hand, had inserted the name of George and John before William, and then republished his will. The codicil leaves the will in full force with regard to everything not expressly, or by necessary implication, revoked or altered; and I am clearly of opinion that the settlement, as far as respected the union of the estates, remained in full force."

In 1 Jarm. Wills, Amer. notes, (Ed. 1880) p. 348, that case seems to be looked on as of doubtful authority. But the language of the court in that case, as quoted, seems to anticipate and except a case like the one at bar. The mistake in supposing that case to be like this one is the fundamental one of regarding this case as one of the non-revocation of the bequest to the executors, and a mere change of the beneficiaries

of the trust. There is in this case a distinct revocation of the legacy to the trustees, while in that case the revocation was only of the direction as to the settlement and limitations.

But it may well be said that, for the purposes of the question in issue, the bequest in the will of the 500 shares was one to the children of James B., for the trust was to cease, and they were to have the shares as an absolute estate, and the trust for the children of Christopher was to cease, and they were to have the 500 shares as an absolute estate. Whether a legacy to the trustees or the children of James B., the second codicil absolutely revoked it. The mere fact that the same shares were afterwards given to the same trustees, on like trusts, for other persons, is not sufficient to make the transaction a mere substitution.

The case of *In re Gibson's Trusts*, 2 Johns. & H. 656, in 1861, before Vice-Chancellor Sir W. Page Wood, afterwards Lord Hatherley, and lord chancellor, and a very eminent authority, was very like the present case. Gibson, by his will, gave several pecuniary legacies, including one of £500, to his sister, Mary Birkett. The will then said: "And all the residue of my personal estate whatsoever I give and bequeath to all the before mentioned pecuniary legatees," excepting certain ones, but not excepting Mary, "and to be divided among them in proportion to their respective pecuniary legacies." Mary died after the will was made, and the testator then made a codicil, reciting her death, and giving the sum of £500 to John Birkett, in trust to pay the same to such of the children of Mary as should attain the age of 21 years, and as they should severally attain that age, and, if more than one, in equal shares. The executors paid the £500 to John Birkett. Of the residue of the personal estate, some £365 would appertain to the £500 legacy, and the question arose whether John Birkett or the surviving pecuniary legatees under the original will were entitled to that money, or whether there was an intestacy in regard to it. The court held, in the first place, that the residuary legacy was not to a class, but to individuals, and that, therefore, the survivors of the pecuniary legatees in the will were not entitled to the money. The counsel for John Birkett relied on the decision in *Lord Carrington* v. *Payne*, and his arguments were the same as those of the plaintiffs' counsel in this case; and it was strongly pressed that the testator intended that the children of Mary should have all that she would have had under the will, and that the court would not hold that there was intestacy. It was urged that the effect of the codicil was the same as if the name of John Birkett had been substituted for that of Mary in the bequest in the will. The court says:

"The testator, being aware of the death of Mary Birkett, and having, in consequence, given the £500 to John Birkett, upon trust for the children of Mary Birkett, does not go on to say a word as to the share of residue which had also been given to Mary Birkett, not, (as I have already held,) as one of a class, but as an individual, *nominatim*. Mr. Kay ingeniously argued the case as if it were governed by the authority of *Lord Carrington* v. *Payne*, but the decision in that case turned upon special circumstances, and Lord Alvanley expressly guarded himself against deciding a point very like that which I have now to determine."

The court then reviews the facts and the decision in *Lord Carrington* v. *Payne,* and quotes from the decision the foregoing remarks of Lord ALVANLEY, and says that the hypothetical case put by him is exactly the *Case of Gibson's Trusts,* and that the case of *Lord Sidney Beauclerk* v. *Mead* is very similar to the hypothetical case put by Lord ALVANLEY, and to the *Gibson Case.* In *Lord Sidney Beauclerk* v. *Mead* the testator devised his freehold lands to Reeve for life, with remainder over, and directed the surplus of his personal estate to be laid out in the purchase of lands, to be settled to the same uses as his freehold lands. By a codicil he directed certain lands so given by the will to Reeve for life to be equally divided between Reeve and Beauclerk during their joint lives. After the death of Reeve, Beauclerk sought to recover one-half of the interests and profits of the surplus of the personal estate which had accrued during the life of Reeve. Lord HARDWICKE held that, neither on the language of the codicil nor on the presumed intention of the testator, could there be any ground for holding that the codicil affected the disposition in the will of the surplus of the personal estate. Recurring to the *Gibson Case,* Mr. Key, for John Birkett, cited *Johnstone* v. *Earl of Harrowby,* 1 De Gex, F. & J. 183, and other cases, as showing that substituted legacies are subject to the same conditions, and carry with them the same incidents, as those for which they are substituted. On this point the court said:

"I am not aware that the rule which those cases established has ever been extended to that length; and it was decided in *Re More's Trust,* 10 Hare, 171, 176, by Lord Justice TURNER, when vice-chancellor, that it cannot be applied to a case where, as here, its application would alter the limitations of the property."

On the contention that the court would not allow intestacy, as here it is urged that the court will not allow the residuary stock to go elsewhere than with the primary, the observations made by the vice-chancellor are very pertinent to this case. He says:

"Though the court presumes that a testator did not intend to die intestate, it may be driven to the conclusion that he has done so, in spite of the presumed intention to the contrary. In the present case I am driven to that conclusion. In making the codicil in question, the testator had his will present to his mind. He had before him not only the legacies bequeathed by his will to the several pecuniary legatees *nominatim,* but also the bequest in his will to the same legatees of his residuary personal estate. Yet, in the codicil, he refers exclusively to the pecuniary legacies, and takes no notice of the residue. Under such circumstances, I cannot hold that the codicil had the effect of passing to the legatee under the codicil not only the legacy given to him by the codicil, but also a share of the residue, as to which it is totally silent."

In *Bridges* v. *Strachan,* 8 Ch. Div. 558, in 1878, before Vice-Chancellor MALINS, one Page by his will gave certain freehold lands in Dorset to trustees, to the use of his daughter, Elizabeth, for life, with remainders over. He also gave to his trustees £3,000, in trust to lay out the same in the purchase of lands in Dorset, and to settle the estates so to be purchased to the same uses as were declared by his will concerning his lands in Dorset. By a codicil he revoked the devise of the freehold lands in Dorset, and, in lieu thereof, gave the same to the use of

his trustees until the oldest son of said Elizabeth should attain the age of 21 years, with remainders over to the use of other persons than said Elizabeth. The question arose whether, the devise of the Dorset estates having been revoked by the codicil, the gift of the £3,000 to be laid out in the purchase of lands in Dorset, to be held upon the same trusts, was revoked by implication. The court said:

"It may be that the testator intended to revoke the latter gift of £3,000, and I think, in all probability, his object was to extend the Dorsetshire estate; but he has omitted any reference to the £3,000 in his codicil. Therefore, on principle, there is no implied revocation. I think that, notwithstanding the case of *Lord Carrington* v. *Payne*, no revocation takes place unless a clear intention is expressed. *Darley* v. *Langworthy*, 3 Brown, Parl. Cas. 359, supports that view, and the case of *Francis* v. *Collier*, 4 Russ. 331, is in conformity with that principle. I think, therefore, that the rights of the parties are the same with regard to the £3,000 as if the codicil had never been made, and that Elizabeth Strachan is entitled for life under the bequest in the will."

That case is directly in point in support of the decision made on the demurrer in *Colt* v. *Colt*, and against the positions of the plaintiffs in this case. The question of the proper construction of the will and codicils in reference to the points raised in *Colt* v. *Colt* and to those now raised has been considered very much at length and with great care, and in reference to all the views urged for the plaintiffs, because of the large amount involved, and of the thoroughness and ability with which the case was presented by the counsel for the plaintiffs, and of the fact that the decision of the highest judicial tribunal of the state of Connecticut, in 33 Conn., was impugned as rendered without much consideration, and without a full and fair hearing of the matter in question. The result is that, on principle and authority, the claim of the plaintiffs must, on the merits, be rejected.

But, even if it were otherwise, the Connecticut suit is set up as a bar to the present one. To this the plaintiffs reply that the Connecticut suit was one against the three executors, as such, and certain legatees; that the present suit is one against the three executors as trustees, and asks for an account, the other legatees and the executors, as such, being added as defendants; that the defendants Colt, Hubbard, and Jarvis had three capacities,—(1) executors; (2) a personal interest each as a legatee; (3) trustees of the children of Christopher; that they were parties to the Connecticut suit only in the first two of those capacities; that only in their capacity as trustees could they receive the trust property from the estate; that there was no decree against them as trustees, and, as trustees, they are not bound by the decree; that, because they were not parties as trustees, they are not responsible as trustees to the plaintiffs for their conduct in the case; that they denied, in the Connecticut case, the title of their *cestuis que trustent;* that they defended only as executors; that they aver, in their answer in this suit, that as executors "they did not appear or act particularly as trustees for or on behalf of" the plaintiffs; that as executors and as trustees they are different parties, though the same persons, and are to be regarded as if the executors and the trustees were different persons; that they did not appear in the Connecticut suit

in the same right in which they are sued in this suit; that they had no right to speak as trustees in that suit, any more than if other persons had been the trustees; that their rights as trustees could not be adjudicated in that suit without their first being made parties to it as trustees; that they ought to have set up, in that case, that, as trustees, they were not parties to it; and that the question passed on in 33 Conn. was not whether the trustees took a share in the residuum in respect to the 500 shares, but whether the children of Christopher took a share. In addition to this, the plaintiffs call attention to the brief put in in the Connecticut suit by the counsel for the executors, on the hearing of the case in 33 Conn. That brief contended that James B. took only a life-estate in his share of the residuary stock, it having been decided on the demurrer that he had a share; that the stock, primary and residuary, given to the two children who died before the testator, was to be disposed of as though there was no will; and that Jarvis took a legacy of stock and Deming did not. These were questions 1, 3, and 5, and were decided in accordance with the views of the brief. The remaining point considered in the brief (question 4) was as to the children of Christopher. The brief urged that those children were not entitled to share in the residuum of stock in respect to the 500 shares, (1) because the residuary clause excluded them, by using the word "hereinbefore," citing *Hall* v. *Severne;* and (2) because there was nothing in the second codicil which, expressly or by implication, gave a share to them in the residuum. These views were sustained by the court. The opposite views were presented by Mr. Henry C. Robinson, claiming to represent the children, as stated in 33 Conn., and as appears by the proofs. He argued the case orally, in the interest of said children, and filed a brief. He maintained the right of the children to share in the residuary stock in respect to the 500 shares, and urged that, even under the word "hereinbefore," the primary legacy to the trustees remained, with a mere change of beneficiaries. He cited five of the cases now cited by the plaintiffs, including *Lord Carrington* v. *Payne,* and cases not now cited, as appears by the minutes of argument taken by the reporter of the court.

The objection that the executors were not made parties as trustees seems to be very technical, and entirely without merit. The will and codicils were before the court, with the fact that the children of Christopher were also before it, by themselves and by the guardian of those of them who were minors, and that all the defendants in the suit were brought in as having or claiming an interest, "either legal or beneficial," as the petition said, in the residuary stock, and as being the parties whose rights it was necessary to ascertain and fix in such manner as to bind those claiming an interest in such stock. If the legal interest in the 500 shares was not in the children, it was in the executors. The fact that it was in the executors in trust did not make it any the less in the executors. It was in the executors, as such, in trust. All testamentary property the title to which is in executors is in them in trust. The three trustees, being parties as executors, were really parties as trustees. The answer does not say that as executors they did not represent the

trust for the plaintiffs.   It says that, being cited to appear as executors, and appearing as executors, they did not appear or act "particularly as trustees for or on behalf of" the plaintiffs, because the plaintiffs "were duly made parties to the proceeding by themselves and by their guardian, and appeared therein by able counsel, and were fully heard."   The trust was given to them as executors, and as being executors; and so, when they were made parties as executors, they became parties as representing the trust and its subject-matter and its beneficiaries.

One of the contentions of the plaintiffs is that, when the same person is by a will appointed executor and trustee, his probate of the will is an acceptance of the trust, and by becoming executor he becomes trustee. This being so, when the executors were made parties as executors, that was all that was necessary.   The second codicil directed that the executors, as executors, should hold the stock in trust for the children of Christopher, and when the suit was brought against them as executors, their *cestuis que trustent* also being parties, and the subject of the suit involved the rights of the trust and of the beneficiaries *nominatim*, it is only technical criticism to insist that they should have been cited as trustees as well as executors.

The executors, by their counsel, Mr. McFarland and Mr. Curtis, on the argument on the demurrer presented the case in favor of these plaintiffs by resisting fully and thoroughly the claim of James B.   When that was decided in favor of James B., the decision against the claim of the children of Christopher followed logically, as the court said in 33 Conn.   They had a large interest in resisting the claim of James B., and the principle of that claim, and in maintaining the construction of the will and codicils, urged by the executors in opposition to the claim of James B.   If James B. were to be defeated, they could expect to share in the residuary stock in respect of their 500 shares; but not if James B. should succeed.   In opposing James B., the executors were maintaining the claim of the plaintiffs.   The evidence of Mr. Hubbard shows that Mrs. Theodora G. Colt, the mother of the children of Christopher, and the guardian of the three minors, was warned by him that a decision in favor of James B. would be damaging to the interests of her children, and endeavored in vain to induce her to oppose the claim of James B.   He also says that after the decision on the demurrer he saw Mrs. Colt, and "explained to her the situation," and told her that there might be serious damage to the interests of her children, and asked her what course she desired should be taken to protect their rights; that she said that Mr. Henry C. Robinson was the counsel for herself and the children, and would act for them as their independent counsel, for the maintenance of their rights; and that Mr. Robinson did act in the matter of the findings made by the superior court preparatory to the reservation of the six questions for the supreme court of errors, and also in the argument of the questions for the children in that court.   Mrs. Colt admits that, before the argument of the demurrer, Mr. Hubbard asked her if she did not intend, in behalf of her minor children, to oppose the claim of James B., and she said she did not, because the in-

terests of her children were identical with those of the other legatees, and the interests of her children would be sufficiently protected by the opposition which the executors intended to make to the claim of James B. She says that he said that her opposing it personally would strengthen the case against James B., and her children's interests were involved in the suit; that she said, "How?" and he said, "By decreasing the general residuum;" that she declined to oppose the claim of James B. personally; and that Mr. Hubbard never hinted to her "that her children's interests were further endangered, or that there was any possibility of their being endangered, in any way that they would not be protected by the executors and trustees."

It is not important to determine whether the recollection of Mr. Hubbard or of Mrs. Colt is the more accurate as to what transpired after the lapse of 15 years. It is not probable that any party or counsel comprehended fully in advance the scope of the decision in favor of James B., as it appeared afterwards. His claim was looked upon not only as untenable, but as foolish, wild, and crazy; and so what all the effects of his success might be were not likely to be fully appreciated beforehand. But, however this may be, the executors faithfully maintained the interests of the children of Christopher, by faithfully opposing the claim of James B. As to the conversation with Mrs. Colt after the decision of the demurrer, so testified to by Mr. Hubbard, Mrs. Colt denies having had any conversation with Mr. Hubbard after the decision on the demurrer, in relation to her taking any action to protect the rights of her children, and denies specifically what Mr. Hubbard testified to on that subject, as before recited. She also denies that she ever employed Mr. Robinson as counsel, although she admits that she was informed by her son Edward, before he died, which was in October, 1868, that Mr. Robinson had appeared and argued for herself and her children in the James B. Colt suit. Mr. Robinson testifies that he was retained by Edward for the interests of the minor children of Christopher, (Edward D., Le Baron B., and Samuel P.,) and that he entered an appearance for them in the suit just before the demurrer was argued in the superior court. Mr. Hubbard says that, having been informed that Mr. Robinson was the counsel for Mrs. Colt and her children in respect to their interest under the will, he applied to Mr. Robinson to act in their behalf in the argument of the demurrer; and that Mr. Robinson said that he was their counsel, but was not authorized to oppose the claim of James B. Mr. Robinson testifies that Mr. McFarland, the counsel for the executors, expressed to him the opinion that the children of Christopher had an interest in the suit larger than their share in James B.'s interest in the residuary stock, and that the amount coming to them under the codicil was very likely to be unfavorably affected by the overruling of the demurrer; and that he communicated this to Edward D., who refused to allow him to act for the minors against James B. Mr. Robinson also testifies distinctly to the ratification to him personally by Mrs. Colt of his employment for her minor children in the James B. suit. Mrs. Colt as distinctly denies that she ever employed Mr. Robinson, or

caused him to be employed, in behalf of her children or herself, in the James B. suit. The plaintiffs contend that all that is shown is that Edward D., who became of age in May, 1865, shortly after the decision of the demurrer, retained Mr. Robinson, in February, 1864, for himself alone; and that Mr. Robinson went on under a mistake, supposing that he was to appear for all the minors and for their guardian, while she and all but Edward regarded him as counsel only for Edward. The weight of the evidence is, largely, that Mr. Robinson appeared for the minors and for their guardian by the authority of the guardian. He presented what were the merits of their case faithfully. The real decision against them was made when the decision was made in favor of James B. What followed was "a logical necessity," as Mr. Hubbard said in his letter to Mrs. Colt of May 11, 1866. The executors fully defended the interests of the children against the claim of James B. They say, in their answer in this suit, that they employed counsel to appear in the cause, and present for the consideration of the court such questions regarding the construction of the will as should appear to them well founded in the law, and that that was done by the counsel. The counsel, Mr. McFarland and Mr. O. S. Seymour, saw that the court must come to the conclusion it reached, notwithstanding the positions taken by Mr. Robinson. The executors represented all parties interested in the stock, and did not hold any stock any more in trust for the plaintiffs than for any other legatee, so far as regarded their duty as executors, summoned in the suit to present to the court views well founded in law, and just and right in respect of all the legatees interested, in regard to the construction of the will and codicils and the distribution of the residuary stock. The views they presented prevailed, not because they presented them, but in spite of Mr. Robinson's argument and of the argument for the executors on the demurrer, on the other side, and there is no ground for the suggestion that if those views, which sustained the claims of the other legatees against those of the children of Christopher, had been presented by those other legatees through some counsel who were not counsel for the executors, the result would have been different. The executors represented all the legatees, and were entitled, and it was their duty, to present to the court what they regarded as the true view of the law as to all the legatees. It was open to any legatee to present different views. The executors themselves were legatees, individually interested in the residuary stock, and in increasing it by what the plaintiffs claimed. This is made a ground of impeachment of their action. But they were interested as executors and as individuals, and were summoned in both capacities, and could not divest themselves of their individual interest or of their interest as representing those who had an adverse interest to the plaintiffs, and were not called upon to assume a position hostile to their own individual interests or to the interest of all except these plaintiffs. There was nothing deserving of animadversion or out of the way, legally or morally, in what they did. They violated no duty, and committed no fraud. They took care that the minors and the guardian should be represented by special counsel. Isabella was of age, and was served with process.

The only answer appearing on file in the case is an answer purporting to be the answer of "the respondents," by Hubbard & McFarland, attorneys. It merely says that the respondents deny the truth of the allegations "in the petitioner's bill of complaint contained, and therefore put themselves on the court for trial." The answer bears date of December term, 1865, but this must be taken to be an error, as the order of September term, 1865, states that the court had overruled the demurrer, "and ordered the respondents to answer over," and that, "by legal removes and continuances, the petition comes to the present term of this court, when the parties again appear, and are at issue upon a general denial of the allegations in the plaintiffs' bill, as on file." "The parties" means "the respondents." In the prior part of the order, the court had named the respondents, nineteen in number, being all there were, including the four children of Christopher and their guardian, and set forth that three of them, by name, were minors, and that Theodora D. was their guardian, and that the respondents were interested in the estate as persons to whom bequests and devises were made by the will and codicils, and then the order went on to find that the petition was duly served and returned to the court at its July term, 1864, "when the parties appeared by their respective counsel, and the said minors were duly represented by their guardians," (referring also to Caldwell H. Colt and his guardian,) and that the cause was continued to a time when "the respondents" filed a demurrer to the petition, and "the parties" were at issue thereon, and the court, "having heard them by their respective counsel, adjudged said demurrer was insufficient, and overruled the same," and then the order proceeded, as before recited, in respect to the answer. It is repeated in the decree of March term, 1866, that "the respondents" appeared at the July term, 1864, and demurred; that the demurrer was overruled; and that, by legal continuances, the action came to the September term, 1865, "when and where the respondents filed their answer, as on file." Then the decree goes on to state that the court, on a hearing, found, as facts proved in the case, that "the petition was duly served and returned" to the court at the July term, 1864, "when the parties appeared by their respective counsel, and the said minors were duly represented by their guardians, and the said cause was continued" to a time "when the respondent filed a demurrer to said petition, and the parties were at issue thereon, and this court, having heard them by their respective counsel, adjudged said demurrer insufficient, and overruled the same, and ordered the respondents to answer over, and, by legal removes and continuances, the petition comes to the present term of this court, when the parties again appear, and are at issue upon a general denial of the allegations in the plaintiffs' bill, as on file." So long as these orders and findings of a court which had jurisdiction of the subject-matter and of the parties stand, this court cannot, in this collateral suit, take any cognizance of the point that the executors, even if they were before the superior court as trustees, opposed the claim of the plaintiffs, if there were otherwise any force in that point. This is not an appellate court. Any error in the decree of the superior court must be corrected by it on a direct application. Nor has this suit any

such object. This same view applies to the point that Isabella did not employ counsel or appear. The decree finds that she appeared, and that, as a respondent, she answered. If she did not, she was of age, and was served with process, and so the decree went against her by default. The same view applies to the three minors and their guardian. They were all served with process. Each of the two decrees finds that they all appeared, and that "the said minors were duly represented by their guardians," (which includes Caldwell H. Colt, as well as these minors,) and that these minors and their guardian answered by the general answer of all the respondents. This must stand as verity till abrogated by the state court.

There is no force in the suggestion that the rights of the minors could not be adjudged till the youngest should become of age. If there was anything in this point, it was one for the state court. At most there was only error, not want of jurisdiction. The point could have been raised before the state court. If it was not, it cannot be taken here. As the state court did adjudge the rights of the minors, it manifestly was of opinion that they could be adjudged, and, if it erred in that opinion, it alone can correct the error. But, aside from this, there was nothing which required the determination of the rights of other parties or of the rights of these minors to await the arrival of the youngest of them at age.

The point is taken for such of the children of Christopher as were minors that no guardian *ad litem* was appointed to represent them in the James B. suit; that their general guardian had no power to represent them; and that she did not in fact appear in the suit. The last suggestion has already been considered. The findings of the two decrees, that "the said minors were duly represented by their guardian," must stand till set aside. This court cannot set them aside in this collateral suit. This is the law in Connecticut, (*Coit* v. *Haven*, 30 Conn. 190,) and the law everywhere. The question is one of regularity, not of jurisdiction; the guardian and minors having admittedly been served with process. Whether the guardian could represent the minors, or whether a guardian *ad litem* was necessary, was a question of local practice, and is settled for this court by the words "duly represented." *Thompson* v. *Whitman*, 18 Wall. 457; *Christmas* v. *Russell*, 5 Wall. 290. Irrespective of this, it seems quite clear that by the Connecticut practice, where the general guardian is made a party, and summoned and served for the minor, it is not necessary to have a guardian *ad litem*. Reeve, Dom. Rel. p. 267; 1 Swift, Syst. p. 217; 1 Swift, Dig. p. 61; *Wilford* v. *Grant*, Kirby, 114.

In the brief of the plaintiffs there is strong criticism on the facts that the executors each had a legacy of 50 shares of stock and its consequent residuary stock; that Mrs. S. Colt, one of them, had a legacy of 1,000 shares of stock and its consequent residuary stock; that she was also heir at law of one-third of 1,000 shares given to the two children who died before the testator, and which was held to be intestate estate, and of one-third of the corresponding residuary shares; that she was also

guardian of Caldwell H. Colt, who had a legacy of 500 shares and its consequent residuary stock, and was entitled to one-third of the said intestate estate and its consequent residuary shares; that Jarvis, as administrator of Henrietta J., was entitled to the same number of shares, as legacies and as intestate estate, as Caldwell H. Colt; and that the residuary stock claimed by the plaintiffs, if not going to them, would go in large part to the executors individually and in the aforesaid capacities. It is also commented on in the brief that, while the executors opposed the rights of the plaintiffs, "they were not slow, or wanting in zeal and energy, in supporting their own claims under the will," and particularly those of Mrs. S. Colt and her family; that they maintained before the court that the legacies of stock to the children of the testator who died before him were not lapsed legacies, so that such stock would go into the residuum, to increase the proportionate share of each legatee therein, but were intestate estate, and so would go to Mrs. S. Colt and the two children who survived the testator; and that they maintained the right of Mr. Jarvis to share in the primary and the residuary stock. It is urged as "a significant fact that the court acceded to the grounds taken by the executors upon each and every question," including that as to the rights of these plaintiffs; and that "the record and the conduct of the defense show" that the case of these plaintiffs "was allowed to suffer, and all advantage of position before the court was sacrificed." The observations hereinbefore made constitute a full answer to these suggestions, and show that legally, actually, and morally there is no valid ground of complaint against the action of the executors.

It is deemed unnecessary to consider any questions as to the effect of the decrees of the court of probate in settling the accounts of the executors, or the distribution, or as to the effect of the releases and discharges given by the plaintiffs, or as to the effect of the alleged laches of the plaintiffs. The case has been considered on the merits, and on the effect of the suit in the Connecticut court, because the questions arising on those points have been deemed to be controlling and decisive against the claims made in this suit by the plaintiffs.

The children of James B. claim in their answer (1) that their father was entitled to a fee, and not a life-estate, in the 574 26-31 shares, and that they, as his only heirs at law, are entitled to a fee in said shares; (2) that their interest, as the lawful issue of James B., in the residuary stock, in respect to the legacy of 500 shares which the original will gave to the executors in trust for the issue of James B., they to have such shares absolutely, with the accumulations thereof, when the youngest of them should have reached the age of 21 years, was not taken away by any codicil to the will; that they are entitled to a share in the residuum of stock in respect to said legacy of 500 shares; and that there was no revocation of their interest in said residuum. They do not claim that the remainder to them, in respect to the primary legacy of 500 shares given to their father for life by the original will, which were to go as an absolute estate to his lawful issue after his death, was not revoked by the first codicil. They were not made parties to the James B. suit,

nor did any one represent them therein, unless it was their father, as plaintiff, or the executors, as defendants.    A brief is now presented on their behalf by Mr. George G. Sill.    Of course, the most they can claim in this suit is the 574 26-31 shares, and the accumulations thereon since the death of their father.    For anything beyond that they must bring their own suit.

The petition of James B. in his suit claimed so much of the residuary stock as appertained to the 500 shares which the will gave to him for life, or a life-estate in it.    The Connecticut courts decided that he took only a life-estate in the residuum, and not an estate in fee, or, as the decree says, "a life-estate only."    So far as the children claim an interest in the 574 26-31 shares as heirs at law of their father, they are, as they claim through him, bound by the adjudication as to his interest, in the suit which he brought, and in which he claimed that his interest was a fee, and in which that point was expressly raised and passed upon, adversely to him, and so adversely to them.    It was not necessary, in that respect, that they should have been parties to the suit.    Aside from this the decision was correct.    The ground on which it was put by the supreme court of errors (33 Conn.) was that such was the clear intention of the testator; that the residuary clause gave a ratable proportion of the residuary stock to the persons and parties to whom the 500 shares were given, namely, James B. and his children, to be enjoyed by a life-estate in one and a remainder in the others; that, without the revocation, it would have been plain that, as they were all parties to the original legacy, they must all take in like manner in the residuum; that the revocation was not sufficiently broad to take away the interest of James B. in the residuum, while it was broad enough to take away that of the children; and that there was nothing in the revocation to show an intention to enlarge the interest of James B., and such could not be the legal effect of a mere revocation of the interest of the children.    These views are sound. His children urge, as reasons why he took in fee all the stock which he took under the residuary clause, that, as a person before named in the will, to whom a legacy of stock was before given by the will, he was to have a share in the residuum, nothing being said about the nature of the estate; that the expressions "ratio and proportion" and "ratable proportions" refer solely to the number of shares, and not to the character of interest; and that the remainder either went to James B., or falls into the residuum, or becomes intestate estate.    They argue that it does not go into the residuum; that the other legatees are given a share only in the other shares than this remainder because they are not given any share in any remainder; that, if it goes into the residuum, it must be divided among all the primary legatees, and, as James B. was one, his children must, as representing him, have a share of it; that it does not become intestate estate; and that it must go to the children of James B., as his heirs.    There does not appear to be any force in any of these suggestions sufficient to give to the children of James B. any share in such remainder, as representing their father.    His interest in the shares was a life-interest, and died with him.

It is plain that the second codicil revoked the legacy made by the will of 500 shares to the executors in trust for the issue of James B. The brief of their counsel does not claim that it did not, though their answer does.

There remains the question as to the disposition to be made of the 574 26-31 shares of stock which are in the hands of the executors by the termination of the life-estate of James B. They are to be distributed as residuary stock in like manner as if James B. had never had any interest in them, save as respects the dividends which belonged to them up to his death. They carry with them the dividends on them since his death, either with or without interest on those dividends. It is submitted by the executors that this part of the estate should, like the rest, be settled in the court of probate; that, as the special claims of the plaintiffs are rejected, the case stands as if it were a bill brought solely to determine the distributive share of each of the plaintiffs in the 574 26-31 shares, as assets of the testator, there being now no litigated question, and the distribution being purely a matter of arithmetic; that the rest of the stock was distributed by the executors under the will, and their accounts of the distribution were rendered to the probate court; that these 574 26-31 shares are all the assets which the estate now has, and the only funds for the payment of the fees and expenses of the executors, and of the fees of counsel and other expenses in this suit, and in any other suit, past or future; that it properly belongs to the court of probate to determine the amount of such fees and expenses; and that it may become necessary to sell the shares, or some of them, and the probate court is the proper court to direct such sale. In analogy to the jurisdiction which the superior court exercised in declaring what the amount of the residuum of stock was, and who of the parties to the James B. suit were entitled to it, and in what proportions, it seems proper that this court, all the parties interested being before it, and the pleadings being such as to allow such a course, should, by its decree, declare the proportions in which the several parties are entitled to the 574 26-31 shares. This question has not been presented, and the parties are entitled to be heard as to the figures, unless they shall agree. The decree should then remit the matter to the executors, to carry out the decree on the basis established by it as to proportions, subject to the ordinary jurisdiction of the court of probate as to allowances of said fees and expenses out of the fund, and as to turning the shares into money by a sale of some or all of them, if and as they may find necessary, but without varying the relative rights of the parties in the shares as established by the decree. This course is proper, in order to protect the executors and the other parties from any further litigation by other suits, or other proceedings in the James B. suit, in respect to the matter adjudged in this suit, which protection a decree in this suit might not afford if it were only a decree dismissing the bill. The decree should contain distinct adjudications, in accordance with the foregoing conclusions, as to the claims made by the plaintiffs in the bill, and as to the claims of the children of James B., and should charge the plaintiffs with the costs of the suit.